[Crim. No. 17985. July 30, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
WESLEY CISIO RICHARDS, Defendant and Appellant.

## COUNSEL

Anthony P. David, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A.. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert R. Granucci and David Schneller, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.—** We hold here that absent extraordinary circumstances probation for a defendant may not be conditioned on restitution of sums involved in a purported crime of which he was acquitted.

Defendant was charged with two counts of grand theft (Pen. Code, § 484) arising out of the sale of mining claims and quitclaim deeds. The People presented evidence that William Ward and Juanita Garbuio, in separate transactions, purchased documents at a public auction because defendant, who executed the sales, led them to believe they were buying sufficient interests to enable them to hunt, fish, or build houses. In fact, the documents conveyed virtually no rights. A jury convicted defendant with respect to the Garbuio sale, but found him not guilty of the charge arising from the Ward transaction. The court placed defendant on two years' probation, on condition that he serve five months in county jail and that he pay $925 in "restitution" to Ward.

I

Before determining the validity of the restitution order, we turn briefly to defendant's attack on the conviction. He asserts that certain testimony by Mrs. Garbuio was erroneously admitted.

The testimony concerned a conversation among defendant, Mrs. Garbuio and her husband, and the district attorney, that took place in the latter's office. Mrs. Garbuio told the jury that she asked defendant for the return of her money, and that the district attorney accused defendant of failing to perform the groundwork necessary to validate the claim he sold her. At this point a defense objection on hearsay grounds was overruled. In response to her refund request and the district attorney's accusation, Mrs. Garbuio continued, defendant said he did not have the money to repay Mrs. Garbuio. He said he needed more time and offered Mrs. Garbuio another mining claim, which she characterized as "just as worthless as the one we had just had." The court overruled another hearsay objection, noting that the testimony regarding the conversation had not been completed.

On cross-examination, Mrs. Garbuio elaborated on her direct testimony. She said that defendant expressly admitted he failed to do the necessary groundwork on the mining claim because he did not have time. She also explained her characterization of the claim as worthless: a third person could usurp her stake in the claim simply by performing the necessary groundwork.

The witness' recollection of defendant's own statements is clearly admissible. Under Evidence Code section 1220, evidence of a statement

is not made inadmissible by the hearsay rule when offered against a party declarant.[1]

■ The testimony concerning statements of the district attorney presents a closer question. By themselves, the statements would be inadmissible hearsay. However, they were introduced to show defendant's response to them, an admissible purpose under Evidence Code section 1221. The section provides that, absent constitutional considerations not raised by these facts, a statement offered against a party may be introduced when the party manifests his adoption of the statement or his belief in its truth. (*People* v. *Preston* (1973) 9 Cal.3d 308, 313-316 [107 Cal.Rptr. 300, 508 P.2d 300].)

Mrs. Garbuio's testimony on direct examination, while somewhat ambiguous, supported the reasonable inference that the district attorney accused defendant of failing to perform the necessary groundwork on the claim he helped sell, and defendant, understanding the allegation, failed to deny it. Whether defendant's response actually constituted an adoptive admission was a question for the jury to decide. (*People* v. *Preston* (1973) *supra,* 9 Cal.3d 308, 316; *People* v. *Davis* (1954) 43 Cal.2d 661, 671-672 [276 P.2d 801].) The court cannot be faulted for overruling the objection to the testimony pending its completion. If, at that point, defendant had moved to strike the prosecutor could have elicited from Mrs. Garbuio testimony that defendant directly admitted he failed to perform the groundwork, an admission that was eventually disclosed on cross-examination.

Defendant also maintains that admission of the district attorney's statements violated his Sixth Amendment right to confront adverse witnesses. This contention was answered in *People* v. *Preston* (1973) *supra,* 9 Cal.3d 308, 315-316, in which we held that an out-of-court statement could properly be admitted against a defendant for the purpose of demonstrating the defendant's adoption of the statement, provided the jury is instructed on the limited purpose of admission. In this case the prosecutor expressly declared, after defendant's objection, that the evidence was offered only to show the response of defendant to the district attorney's accusation. Although no limiting instruction was

---

[1]Defendant also asserts that evidence of his conduct and statements is inadmissible by virtue of Evidence Code section 1152, which prohibits admission of evidence of offers to compromise or statements made in the course of negotiations in order to show the liability of the person making the offer. Defendant's failure to make an objection on this ground at trial precludes further consideration of the point. (Evid. Code, § 353; *People* v. *Welch* (1972) 8 Cal.3d 106, 115 [104 Cal.Rptr. 217, 501 P.2d 225].)

given, defendant, having failed to request such an instruction, may not complain of its absence. (Evid. Code, § 355; *People* v. *Perry* (1972) 7 Cal.3d 756, 787-788 [103 Cal.Rptr. 161, 499 P.2d 129].)

## II

■ We turn now to the question of the validity of the probation order. The court ordered defendant, as a condition of probation, to make "restitution" to Ward, even though defendant was acquitted of criminal charges in the Ward transaction.[2]

■ Trial courts are granted broad discretion under Penal Code section 1203.1 to prescribe conditions of probation. (*In re Bushman* (1970) 1 Cal.3d 767, 776 [83 Cal.Rptr. 375, 463 P.2d 727].) However, a condition imposed must serve a purpose specified in the code section.

This requirement presents no problem for a court ordering a convicted defendant to make restitution to the victim for damages actually caused by the crime. Section 1203.1 expressly allows courts to impose reparation conditions "for any injury done to any person resulting from such breach." A closer question arises, however, when the court imposes a probationary condition requiring a defendant to pay a third party for losses not actually caused by the defendant's crime. In those circumstances the defendant is in effect required to choose between accepting incarceration and righting a wrong he may not in fact have committed. Indeed, here the trial judge, in ordering defendant to make restitution, declared, "I would be disposed to giving him a little less time in jail for that."

A number of jurisdictions, refusing to allow courts to impose such conditions, have limited restitution to actual losses caused by the crime proved.[3] California has not been so parsimonious. ■ Restitution

---

[2]According to testimony at trial, defendant had previously refunded Mrs. Garbuio's money.

[3]See *United States* v. *Taylor* (4th Cir. 1962) 305 F.2d 183 [97 A.L.R.2d 791]; *Karrell* v. *United States* (9th Cir. 1950) 181 F.2d 981; *People* v. *Mahle* (1974) 57 Ill.2d 279 [312 N.E.2d 267]; *State* v. *Scherr* (1960) 9 Wis.2d 418 [101 N.W.2d 77] (restitution limited to amount for which defendant was convicted or which he freely admits); *People* v. *Becker* (1957) 349 Mich. 476 [84 N.W.2d 833]. The federal and Illinois decisions were based on statutes which expressly limited restitution to the amount involved in the crime for which the defendant was convicted.

California's statute does not contain such an express limitation. Section 1203.1 notes a number of probation conditions a court may impose, including "reparation." It further provides that "The court may impose and require any or all of the above-mentioned ... conditions and other reasonable conditions, as it may determine are fitting and proper to

may exceed the losses for which a defendant has been held culpable (*People* v. *Lent* (1975) 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545]; *People* v. *Miller* (1967) 256 Cal.App.2d 348 [64 Cal.Rptr. 20]). But courts must tread lightly in this area lest they be reduced to "mere collection agencies" (*People* v. *Miller, supra,* at p. 356; *People* v. *Williams* (1966) 247 Cal.App.2d 394, 409 [55 Cal.Rptr. 550]), and restitution must in each case be narrowly tailored to serve a purpose described in section 1203.1.

The major goal of section 1203.1 is to rehabilitate the criminal. Restitution imposed in a proper case and in an appropriate manner may serve the salutary purpose of making a criminal understand that he has harmed not merely society in the abstract but also individual human beings, and that he has a responsibility to make them whole.

■ But the trial judge herein appeared to posit an additional and ill-conceived purpose: to resolve the civil liability of the criminal. In making the restitution order, the court observed that defendant "owed the money" to Ward, and "allowing him to avoid this debt would be unjust."

■ Disposing of civil liability cannot be a function of restitution in a criminal case. To begin with, the criminal justice system is essentially incapable of determining that a defendant is in fact civilly liable, and if so, to what extent. A judge may infer from a jury verdict of guilt in a theft case that a defendant is liable to the crime victim. But a trial court cannot properly conclude that the defendant owes money to a third party for other unproved or disproved crimes or conduct. A party sued civilly has important due process rights, including appropriate pleadings, discovery, and a right to a trial by jury on the specific issues of liability and damages. The judge in the criminal trial should not be permitted to emasculate those rights by simply declaring his belief that the defendant owes a sum of money.

The Michigan Supreme Court, in *People* v. *Becker* (1957) *supra,* 84 N.W.2d 833, 839, has pointed out the weakness of such practice. Striking down a probation condition requiring a defendant convicted of leaving the scene of an accident to pay the medical expenses of the pedestrians he hit, the court declared, "The liability . . . is fixed by the [trial] court. How? Is it by a trial in open court, upon pleadings, defining the claims

the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer . . . ."

and issues, with the taking of testimony under oath, confrontation of witnesses, cross-examination, and assertion of defenses, including that of contributory negligence? Clearly not. It was determined, says the court, 'from my investigation.' "

■ Similarly, in the present case, defendant's liability to Ward cannot be based merely on the trial court's belief that money was owed to Ward. No matter how compelling the evidence may have been, the jury made no finding that defendant owed a debt. More importantly, defendant never received a trial on the debt issue. At his criminal trial, defendant was required to raise a reasonable doubt regarding any of the elements of theft. No duty was placed on him, nor could it be in that proceeding, to prove that he was not civilly liable. Any legal conclusion that defendant owed money, therefore, is not only insupportable, it is reached here in the absence of due process rights assured to every litigant.

Even if it can be implied that defendant owes money to Ward, the conclusion does not necessarily follow that he is civilly liable. Civil law, of course, provides for priorities among creditors and rehabilitation of debtors in many cases. No evidence could have been introduced in the criminal trial herein as to whether defendant had declared bankruptcy or other creditors had asserted monetary claims against him superior to that of Ward. Thus "Restitution or reparation is not a substitute for a civil action to recover damages" (*People v. Grago* (1960) 24 Misc.2d 739 [204 N.Y.S.2d 774, 777]), and a defendant's duty of restitution cannot be predicated merely on a purported debt.[4]

However, as noted above, California courts have approved the imposition for rehabilitative purposes of restitution not limited to the loss caused by the offense of which the defendant was convicted. The

[1]California courts have traditionally been wary of using the probation system for any nonrehabilitative purpose, no matter how superficially rational. For example, in *People v. Dominguez* (1967) 256 Cal.App.2d 623 [64 Cal.Rptr. 290], the trial court conditioned probation for a convicted robber on her abstention from pregnancy while unmarried. Holding the condition invalid, the Court of Appeal noted that the trial court apparently wished to protect the public by dissuading the woman from producing further offspring who might receive welfare. The court stated, "The burden upon the taxpayers to maintain illegitimate children at the public expense is a grave problem, but a court cannot use its awesome power in imposing conditions of probation to vindicate the public interest in reducing the welfare rolls by applying unreasonable conditions of probation. The interest of the public in saving money for the taxpayers is by no means the same thing as the public interest in the reformation and rehabilitation of offenders." (*Id.*, at p. 628.)

question then is whether compelling defendant to pay Ward $925 served a demonstrably rehabilitative purpose.

It is generally difficult to determine, as is required by section 1203.1, when an order of restitution is likely to help reform a criminal. ■ Ideally, restitution is designed to redirect the "conscious or unconscious thoughts, emotions, or conflicts which motivated the crime" (Schafer, *Restitution to Victims of Crime—An Old Correctional Aim Modernized* (1965) 50 Minn.L.Rev. 243, 250). In this way, the criminal is encouraged to accept his social responsibility. (*Id.*)

If a restitution order is to redirect a defendant to acceptance of responsibility for the crime he has committed, the order must be directly related to that crime. (*People* v. *Dominguez* (1967) *supra,* 256 Cal.App.2d at p. 628.) It is obvious that unless the act for which the defendant is ordered to make restitution was committed with the same state of mind as the offense of which he was convicted, this salutary rehabilitative effect cannot take place.[5] No rehabilitative purpose can be served by forcing a person to confront tendencies which differ from those which induced his crime. For example, in *People* v. *Williams* (1966) *supra,* 247 Cal.App.2d 394, the defendant assaulted a store proprietor who refused to honor his Diners Club credit card. The Court of Appeal struck down a restitution order requiring the defendant to repay Diners Club for money owed on the credit card. The purpose of restitution in an assault case is to make the defendant accept responsibility for and thus curb his violent tendencies, a purpose that would have justified requiring restitution to the assault victim. But restitution to Diners Club would, at best, cause the defendant to confront his inclination towards fiscal irresponsibility, which is neither related to violence nor criminally punishable in California.[6]

---

[5] In adopting the above standard, we are by no means engaging in what the dissent labels "the magic of judicial legislation." We are, instead, interpreting the broad language of section 1203.1, which does not clearly articulate those conditions of probation that are reasonable and those that are not. This is by no means a novel process. A similar task was undertaken by the appellate courts which initially determined that section 1203.1 permits restitution exceeding the losses for which a defendant has been held culpable (see, e.g., *People* v. *Williams* (1966) *supra,* 247 Cal.App.2d 394, 404), even though a contrary construction of the statute was plausible.

We find it perplexing that a substantial portion of the dissent is devoted to derisive criticism of a student note in a law review. We neither cite nor discuss the straw man attacked by the dissent.

[6] It is at least arguable that the same result could have been reached in *People* v. *Miller* (1967) *supra,* 256 Cal.App.2d 348. In *Miller,* the defendant was convicted of defrauding a party of $821 in connection with his operation of a construction contracting business. The original restitution order, limited to the $821, was modified by the trial court to

In contrast, we recently upheld the validity of a restitution order in *People* v. *Lent* (1975) *supra,* 15 Cal.3d 481. In *Lent,* the defendant was convicted of one count of defrauding a woman of $500, but acquitted on another count charging him with theft of $1,278 from the same woman. The trial court held a two-day probation and sentencing hearing, at which nine witnesses were heard. At the conclusion of the hearing, the judge declared that the fact the defendant had been acquitted of stealing the $1,278 did not absolve him of the false statements regarding the disposition of those funds. He ordered the defendant, as a condition of probation, to pay the victim the $1,278, as well as the $500 he was convicted of stealing. On appeal, we held the $1,278 restitution order justified because the defendant had shown the same type of dishonesty in regard to the disposition of those funds as he had demonstrated in the proved theft of the $500.

 While the present case seems at first glance to involve facts comparable to *Lent,* closer analysis reveals that the restitution order here is more akin to that disapproved in *Williams.* As in *Williams,* there was no showing that making defendant pay restitution to Ward would in any way rehabilitate him for his proved criminal behavior toward Mrs. Garbuio. After the jury exonerated him of criminal conduct towards Ward, the judge made no specific finding that defendant's behavior in the Ward transaction or his testimony regarding it showed a dishonest state of mind comparable to that involved in the charge of which he was convicted. The judge merely declared, "I know from the evidence presented during the course of the trial that Mr. and Mrs. Ward received nothing of value from the defendant as a result of the purchase made, and they were obviously relieved of some nine hundred plus dollars which has not yet been recovered. . . . I think very definitely that Mr. Richards should make restitution to Mr. and Mrs. Ward because he got their money." In other words, the court erroneously believed that restitution could be imposed merely to collect the purported debt to Ward.

require the defendant to pay several other claims, each based on a breach of contract arising out of the same business. The Court of Appeal upheld the order, even though, as it noted, there was no indication that any of the additional claims arose from criminal or dishonest conduct by the defendant. (*Id.,* at p. 355.) As we noted in *People* v. *Lent* (1975) *supra,* 15 Cal.3d 481, 487, *Miller,* which may have involved uncharged crimes, is distinguishable on its facts from a case in which a defendant has actually been exonerated of criminal activity. But it is questionable whether the trial court in *Miller* made a determination that the defendant had breached his contracts with the same fraudulent intent that formed the basis of his theft conviction. Absent such a determination, which is not evident in the Court of Appeal opinion, the restitution order in that case should not have been modified.

Even if the trial court's statement could be interpreted as a conclusion that defendant had acted improperly in the Ward transaction, restitution would still not be justified. The jury did not find overt dishonesty on the part of defendant towards Ward. And, in contrast to the *Lent* case, the court held no hearing to determine facts other than those which led to defendant's acquittal. No witnesses were heard, and the entire sentencing procedure took only a few minutes. The trial judge is not justified to draw conclusions about an acquitted defendant's responsibility for restitution to persons other than the criminal victim based solely on the trial record.

It is entirely irrelevant that the burden of proof in a criminal case differs from the burden in a civil case. This is not a civil case. It is a criminal proceeding in which the defendant, protecting his liberty, will be acquitted if he raises a reasonable doubt of his guilt. In the course of convincing a jury to doubt his guilt on one charge, a defendant should not have the additional task of persuading the judge regarding the subsequent sentencing disposition on other charges.

The order admitting defendant to probation on condition that he make restitution to Ward is reversed. As the court has already determined that defendant is a proper candidate for probation, the case is remanded with directions to grant probation on reasonable conditions.

Wright, C. J., Tobriner, J., and Sullivan, J., concurred.

**CLARK, J.,** Dissenting.—I agree with the majority insofar as they reiterate the following well-established principles:

Trial courts have broad discretion in creating conditions to probation.

The bounds of this discretion are set forth in section 1203.1 of the Penal Code which provides that a court may impose "reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer . . . ."

Accordingly, the scope of appellate review of a probation condition is limited to determining whether it serves a purpose specified in section 1203.1.

Probation may be conditioned upon restitution of the damages caused by the crime of which the defendant has been convicted because such condition repairs the "injury . . . resulting from such breach." However, the proper scope of restitution is not limited to such damages. Probation may also be conditioned, e.g., upon restitution of sums involved in charges of which the defendant has been acquitted, provided that the "reformation and rehabilitation of the probationer" is thereby served.

I disagree with the majority insofar as they pay mere lip service to these principles while emasculating the trial court's discretion by holding that "unless the act for which the defendant is ordered to make restitution was committed with the same state of mind as the offense of which the defendant was convicted," restitution will serve no rehabilitative purpose. (*Ante,* p. 622.)

The sole authority for this novel proposition is a student note in a law review. (Note, *Use of Restitution in the Criminal Process: People v. Miller* (1969) 16 U.C.L.A.L.Rev. 456, 465.)[1] The irony in the majority's adoption of the proposition is that the author advanced it, not as an interpretation of section 1203.1, nor as a restatement of the case law, but as an alternative to both.

The student author was of the opinion that the Legislature in enacting section 1203.1 intended to limit restitution to the damages caused by the crime of which the defendant has been convicted, i.e., "the debts proximately caused by the criminal act." (16 U.C.L.A.L.Rev. at pp. 461-462, 464.) The statute, as he interpreted it, is too restrictive. "[I]t is submitted that such an approach does not allow for restitution in many cases where it would further the rehabilitation and reformation of the offender." (*Id.,* at p. 464.) The cases interpreting the section, he recognized, have not restricted restitution to debts proximately caused by the criminal act. (*Id.,* at p. 463.) However, the courts, in his opinion, have fallen into the opposite error. "As a rule of law, rehabilitation may mean all things to all courts." (*Id.,* at p. 462.) "What is needed," he contended, "is a standard more specific than merely the 'rehabilitation' of the

---

[1]The majority opinion fails to credit the student author. However, one need not be a literary critic to trace this idea to its source. It is expressed in virtually the same words in the student note. "[Restitution] should be limited solely to those acts which manifest a similar state of mind or intent as that required for the criminal offense. Since its purpose is to 'redirect those same conscious or unconscious thoughts, emotions, or conflicts which motivated the crime,' correctional restitution would not be warranted where the state of mind accompanying certain conduct differed from that of the criminal act." (16 U.C.L.A.L.Rev. at p. 465.)

probationer and yet more flexible than that of 'proximate cause.' " (*Id.*, at p. 465.) Unlike the student author, the majority fails to distinguish between what the law is and what it, arguably, ought to be. His proposal—to limit restitutionary orders to acts committed with the same state of mind as the offense of which the defendant was convicted—finds favor with them. Therefore, through the magic of judicial legislation, it becomes law.

The novelty of this proposition is demonstrated by the majority's failure to articulate it in *People* v. *Lent* (1975) 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545], although *Lent* was argued the same day as this case and presented the same question—whether probation may be conditioned upon restitution of sums involved in charges of which the defendant has been acquitted. "Ordinarily," the majority held, "such result would preclude inclusion of that item in the restitution order." (15 Cal.3d at p. 487.) However, *Lent* was an exception to the rule, the majority concluded, because "additional circumstances were developed in the unusually prolonged probation hearing conducted by the meticulous trial judge." (*Id.*) Apparently the majority had not yet read the student note because they give no indication that at the conclusion of the unusually prolonged hearing the trial judge found, or was required to find, that the theft of which Lent was acquitted was committed with the "same state of mind" as the theft of which he was convicted.[2]

Even more significant than the majority's failure in *Lent* to state and adopt the student author's proposal is their repeated citation with

---

[2]"At the conclusion of the probation hearing the trial judge declared that while he gave consideration to defendant's acquittal of the theft of the $1,278, under the state of the record he did not deem the verdict to have absolved defendant of the 'false statements about where those proceeds went and for what purpose.' The judge was convinced 'that Mr. Lent in his testimony before the jury perjured himself as respects the disposition of the proceeds of this $1,278 check.' And, finally, the court found that the total 'culpability of Mr. Lent is not displayed in the setting of this case but is reflected further in the evidence [produced] at the formal probation hearing.' [¶] Under these circumstances we can find no abuse of discretion in the probation order." (*People* v. *Lent*, *supra*, 15 Cal.3d at p. 487.)

I concurred in a separate opinion. "I concur in the judgment, but would qualify the statement that acquittal of the theft of the $1,278 '[o]rdinarily . . . would preclude inclusion of that item in the restitution order.' (*Ante*, p. 487.) I assume arguendo that the acquittal here would have precluded ordering restitution of the sum involved in that count, but for the fact that 'additional circumstances were developed in the unusually prolonged probation hearing.' (*Id.*) However, when the preponderance of the evidence produced at the trial itself supports such an order, additional evidence need not be presented at the probation hearing." (15 Cal.3d 481, 488 (Clark, J., conc.).)

approval of *People* v. *Miller* (1967) 256 Cal.App.2d 348 [64 Cal.Rptr, 20], the subject of his case note and his harshest criticism.

The probationer in *Miller* operated a general contracting company which was declared bankrupt prior to the institution of the criminal proceedings. He was convicted of defrauding a couple named Keefe of $821 by accepting an advance payment for work he failed to perform. Although it limited the restitutionary condition of probation to the loss suffered by the Keefes, the court expressed hope that Miller would eventually reimburse the other creditors injured by his business operations. Eight months after the original grant of probation, the probation officer submitted memoranda informing the court that the Keefes' actual loss was over $2,000; that others had claims against Miller similar to the Keefes', a common factor of the claims being the acceptance of money for work not performed; that the other claimants were listed and considered in the bankruptcy proceeding; and that the claims for restitution, including the Keefes', totalled $8,900.

The probation officer concluded by asking the court whether it wished to hear a petition to modify probation to determine the amount of restitution. The court responded informally that no hearing was necessary. Based on the memoranda, without any formal proceeding, defendant was informed of the increase in the amount of restitution. (256 Cal.App.2d at pp. 350-351.)

Affirming the order modifying probation, the Court of Appeal stated: "[T]here is no indication that any of the claims other than those of the Keefes were based on criminal conduct, nor is there any showing that they were based on fraudulent representations to the claimants of the sort made to the Keefes, resulting in defendant's conviction. Rather they are premised on defendant's breaches of construction contracts or on losses occasioned by liens being placed on the claimants' properties as a result of defendant's activities. Nevertheless, defendant's conduct toward the other restitution claimants arose out his operation of the same business through which he defrauded the Keefes. In view of the circumstances that this business had been declared bankrupt shortly before the instant criminal proceedings and defendant owed over $10,000 to his creditors, the trial court and the probation office may have concluded that defendant's borderline operation of his construction company put him in a situation in which he was likely to engage in fraudulent activities so as to warrant the conclusion that defendant's rehabilitation could best be achieved in a context of complete reparation

for the harm done his former customers. Such a conclusion belies the remoteness we found to exist in [*People* v. *Williams* (1966) 247 Cal.App.2d 394 (55 Cal.Rptr. 550)] and appears to us to be a reasonable exercise of discretion." (256 Cal.App.2d at pp. 355-356.)

I heartily concur. And as late as *Lent,* apparently, so did the majority for they repeatedly cited *Miller* with approval, distinguishing it as a case involving, not acquittal, but "criminal acts uncharged or untried." (*People* v. *Lent, supra,* 15 Cal.3d at pp. 486-487.) Now, however, because no hearing was conducted there into the question whether the other acts for which the probationer was required to make restitution were committed with the same state of mind as the offense of which he was convicted, *Miller* is clearly disapproved.

In reaching its conclusion the *Miller* court stated the standard of review which should be applied in this case. "Probation is granted in hope of rehabilitating the defendant and must be conditioned on the realities of the situation, without all of the technical limitations determining the scope of the offense of which defendant was convicted. In determining where to draw the line between what is a reasonable and what is an unreasonable condition, common sense and reason must limit the court's discretion. This discretion must not be disturbed unless there has been a manifest abuse." (256 Cal.App.2d at p. 356.)

No such abuse appears in this case. Both the Ward and the Garbuio transactions involved sales of worthless interests in real estate located in the same county. Both buyers received documents designated as mining claims and were given quitclaim deeds. Both transactions occurred at the same time and place. Finally, as the trial judge observed, although the evidence fell short of establishing criminality in the Ward transaction, it revealed that defendant owed the money and that allowing him to avoid this debt would be unjust. Under these circumstances, the trial court acted well within its discretion in determining that restitution to Ward would contribute to defendant's rehabilitation.

I would affirm the order admitting defendant to probation on condition that he make restitution to Ward.

McComb, J., and Richardson, J., concurred.