[Crim. No. 8565. Fourth Dist., Div. One. Jan. 13, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH LEO KELLER, Defendant and Appellant.

**COUNSEL**

Appellate Defenders, Inc., under appointment by the Court of Appeal, George C. Wetzel and Stephen J. Perrello, Jr., for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom and Michael E. Lasater, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

STANIFORTH, J.—Defendant Joseph Leo Keller appeals from a judgment convicting him of possession of heroin (Health & Saf. Code, § 11350). He pleaded 'guilty after an unsuccessful motion to suppress evidence (Pen. Code, § 1538.5). Keller was granted three years probation.

The contested search of Keller's premises and discovery of the contraband was based upon Keller's waiver of his Fourth Amendment federal constitutional rights required as a condition of probation granted in a 1975 municipal court conviction for petty theft (Pen. Code, § 488). Keller had stolen a 49-cent ballpoint pen.

Upon his guilty plea and after consideration of a probation officer's report, the municipal court ordered three years probation conditioned upon the usual "narcotics conditions." They were:

"2. That he submit to urinalysis tests for the use of controlled substances when required by the Probation Officer or other law enforcement officers;

"3. That he not associate with any known users of or traffickers in controlled substances;

"4. That he not enter Mexico;

"5. That he submit his person, property, place of residence or abode, vehicle, personal effects to search at any time, with or without a search warrant by the Probation Officer or any law enforcement officer; . . ."

The probation officer's report reflected Keller's prior record. It consisted of two offenses for marijuana possession, one in 1957 (juvenile) and the second in 1958. In 1962 Keller slaughtered a steer on a friend's ranch and pleaded guilty to grand theft, stealing a carcass (Pen. Code, § 487a, subd. (b)). No other criminal activity appears on his record. However, Keller separated from his wife in 1969. She relates events of 1965 when "Joe was dealing in drugs; marijuana, pills . . . ." She charges he was a drug trafficker and that she "took a rap for Joe"; she possessed half a "can" of marijuana. She also charges Keller with homosexual activities. She moved to Arizona in 1969 and stated "Joe does not see her or his children." Keller admitted shooting heroin five months prior to stealing the ballpoint pen. He then voluntarily entered a detoxification hospital, stayed seven days and had not, by his own statement, used heroin to date of the probation officer's report. No facts connected the theft of the ballpoint pen with narcotics activities; no facts point to the theft as a means to "feed" some unspecified drug craving. There was only the probation officer's speculation that Keller's habit was "of greater frequency and intensity than admitted" and "possibly this is influencing every aspect of his life." No evidentiary base is shown for this speculation in either the municipal court or superior court proceedings.

■ A sentencing court is vested under Penal Code section 1203.1 with broad discretion to prescribe conditions of probation to foster rehabilitation and to protect the public (*People* v. *Richards,* 17 Cal.3d 614, 619 [131 Cal.Rptr. 537, 552 P.2d 97]). The court could impose any "reasonable conditions, as it may determine are fitting and proper to the end that justice may be done."[1]

---

[1]Penal Code section 1203.1 provides in pertinent part:

"The court or judge thereof, in the order granting probation, may suspend the imposing, or the execution of the sentence and may direct that such suspension may continue for such period of time not exceeding the maximum possible term of such sentence, except as hereinafter set forth, and upon such terms and conditions as it shall determine. The court, or judge thereof, in the order granting probation and as a condition thereof may imprison the defendant in the county jail for a period not exceeding the maximum time fixed by law in the instant case; . . .

" . . . . . . . . . .

"The court may impose and require any or all of the above-mentioned terms of imprisonment, fine and conditions and other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer. . . ."

■ The discretion granted is not boundless. In the first place, the authority is wholly statutory; the statute furnishes and limits the measure of authority which the court may thus exercise (*Fayad* v. *Superior Court,* 153 Cal.App.2d 79 [313 P.2d 669]; *Oster* v. *Municipal Court,* 45 Cal.2d 134, 139 [287 P.2d 755]).

Secondly, the discretion to impose conditions of probation as granted by Penal Code section 1203.1 is further circumscribed by constitutional safeguards. Human liberty is involved. A probationer has the right to enjoy a significant degree of privacy, or liberty, under the Fourth, Fifth and Fourteenth Amendments to the federal Constitution (see *Morrissey* v. *Brewer,* 408 U.S. 471, 482 [33 L.Ed.2d 484, 494-495, 92 S.Ct. 2593]; *United States* v. *Consuelo-Gonzalez,* 521 F.2d 259, 265; *In re Martinez,* 1 Cal.3d 641, 647 [83 Cal.Rptr. 382, 463 P.2d 734]).

This judicial insight rests upon the premise that a probationer's (or parolee's) "condition is very different from that of confinement in a prison." (*Morrissey* v. *Brewer, supra* at p. 482 [33 L.Ed.2d at p. 495, 92 S.Ct. at p. 2601].) The severe limitation on an inmate's Fourth Amendment rights in a custodial situation passes constitutional muster by virtue of the sheer necessity for orderly administration of a prison or jail. The spot check of a jail cell, however, bears no relationship to the reasonable expectation of privacy—albeit reduced—of the probationer living in his home with family. ■ As a matter of constitutional principle, the scope of constitutionally permissible invasion of a prisoner's Fourth Amendment rights is not coterminous with those that may be taken from a probationer by the "waiver" process.

The California Supreme Court (*People* v. *Mason,* 5 Cal.3d 759 [97 Cal.Rptr. 302, 488 P.2d 630]) justifies the warrantless search, the invasion of Fourth Amendment rights, of the narcotics-offender-probationer on the premise of a "reduced expectation of privacy" (*id.* at pp. 764-765) flowing from the individual's consent given as part of the sentencing procedure.[2] Under the *Mason* rationale a probationer who has waived

---

[2]The "waiver" theory presumes consent. However, it is a "hypothetical" or a "nominal" rather than real consent. The overhanging Damoclean sword of imprisonment prevents a true consent. The "waiver" concept also fails to take into account the duty, the authority, nondelegable, of the trial court to imprison or grant probation on lawful terms. That power does not, cannot, rest on either real or nominal "waiver" or "consent" by the to-be-sentenced defendant. (Polonsky, *Limitations Upon Trial Court Discretion in Imposing Conditions of Probation* (1974) 8 Ga.L.Rev. 466, 483 (hereinafter *Conditions of Probation*).) However, by accepting the benefits of probation a defendant does not waive the right to urge the invalidity of an improper, a void, condition on direct appeal from that judgment or on habeas corpus (*In re Bushman,* 1 Cal.3d 767, 776 [83

the Fourth Amendment right would have no reasonable expectation of privacy as to those conditions which are necessitated "by legitimate governmental demands." Consent to search provisions as a condition of probation on a narcotics-drug charge have, following *Mason,* generally been upheld (*People* v. *Calais,* 37 Cal.App.3d 898, 903-904 [112 Cal.Rptr. 685]; *Russi* v. *Superior Court,* 33 Cal.App.3d 160, 168 [108 Cal.Rptr. 716]; see also *People* v. *Kern,* 264 Cal.App.2d 962 [71 Cal.Rptr. 105] and *People* v. *Fitzpatrick,* 3 Cal.App.3d 824 [84 Cal.Rptr. 78], pre-*Mason* decisions).

■ The question here is novel. No California case has extended the *Mason* rule to authorize the waiver of Fourth Amendment rights as condition of probation on a misdemeanor petty theft conviction. No California Supreme Court case has extended the *Mason* rule beyond the *Mason* facts. Therefore we must examine, for guidance, the statutory and constitutional underpinnings of a probation condition that would take away a constitutional right for theft of a ballpoint pen.

The landmark case *People* v. *Dominguez,* 256 Cal.App.2d 623 [64 Cal.Rptr. 290], is the point of beginning for any measurement of the precise authority and restrictions upon judicial discretion under Penal Code section 1203.1. There probation was granted a convicted robber with the condition she abstain from pregnancy while unmarried. The *Dominguez* court construed Penal Code section 1203.1 to set limits on the trial court's discretion in imposing conditions on probation stating: "A condition of probation which (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality does not serve the statutory ends of probation and is invalid." (*Id.* at p. 627.)

Concerning the first of these limitations, the *Dominguez* court said: "If the condition of probation is not directly related to the crime, the condition may be invalidated. [Citation.]" (*Id.* at p. 628.)

In holding the particular condition invalid, the appeal court stated: "... future pregnancy was unrelated to robbery. Becoming pregnant while

Cal.Rptr. 375, 463 P.2d 727]; *People* v. *Dominguez,* 256 Cal.App.2d 623, 629 [64 Cal.Rptr. 290]; *In re Allen,* 71 Cal.2d 388, 389 [78 Cal.Rptr. 207, 455 P.2d 143]) or in a proceeding where the admissibility of the product of a search pends upon the propriety of a waiver of Fourth Amendment rights taken in a separate distinct action (*People* v. *Mason, supra,* 5 Cal.3d 759).

unmarried is a misfortune, not a crime. Appellant's future pregnancy had no reasonable relationship to future criminality. It is certainly not pragmatically demonstrable that unmarried, pregnant women are disposed to commit crimes. There is no rational basis to believe that poor, unmarried women tend to commit crimes upon becoming pregnant." (*Id.* at p. 627.)

The public interest in saving taxpayers' dollars used to maintain children of unwed mothers "is by no means the same thing as the public interest in the reformation and rehabilitation of offenders." (*Id.* at p. 628.)

The *Dominguez* circumscriptions on the authority of the judge in imposing conditions of probation have uniformly been reaffirmed in later decisions of the Supreme Court of the State of California. See *In re Bushman,* 1 Cal.3d 767, 777 [83 Cal.Rptr. 375, 463 P.2d 727]; *People* v. *Mason, supra,* 5 Cal.3d 759, 764; *People* v. *Lent,* 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545]; and *People* v. *Richards, supra,* 17 Cal.3d 614, 622.

In *In re Bushman, supra,* 1 Cal.3d 767, the Supreme Court affirmed the requirement of *Dominguez* that the condition of probation to be valid must be "directly related" to the crime committed and "reasonably related" to future criminality. Bushman had been convicted of disturbing the peace. The condition or probation imposed was that of psychiatric treatment. Said the Supreme Court: "There is no evidence to support the trial court's conclusion that petitioner needed psychiatric care. No expert witnesses testified to his mental condition. Neither the prosecution nor the court questioned any witnesses about that condition. Under these circumstances *the condition as to psychiatric care had no relationship to the crime of which petitioner was convicted. Furthermore, without any showing that mental instability contributed to that offense, psychiatric care cannot reasonably be related to future criminality.*" (*Id.* at p. 777; italics added.)

*People* v. *Mason, supra,* 5 Cal.3d 759, recited and followed the *Dominguez* limitations and held the requirement that Mason submit his person or property to warrantless search upon request of police or probation officers passed the *Dominguez* test. The Supreme Court concluded: "It seems beyond dispute that a condition of probation which requires a prior narcotics offender to submit to a search meets the test set forth in *Bushman,* since that condition is reasonably related to the

probationer's prior criminal conduct and is aimed at deterring or discovering subsequent criminal offenses. Indeed, the cases have held that such a condition is reasonable and valid, being 'related to [the probationer's] reformation and rehabilitation in the light of the offense of which he was convicted.' " (*Id.* at p. 764.)

The *Mason* decision dealt not merely with the *Dominguez* statutory standards, but also the Fourth Amendment constitutional nerve touched by the warrantless search provision. The *Mason* court, in discussing the invasion of the constitutional right, said: "Defendant contends that a probation condition which requires submission to a warrantless search constitutes an unreasonable invasion of his Fourth Amendment rights. We have heretofore suggested, however, that persons conditionally released to society, such as parolees, may have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities 'reasonable' which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands. [Citations.] Thus, a probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection." (*Id.* at pp. 764-765.)

The breadth of the last assertion is abated somewhat by the language in footnote 3 on page 765: "We do not intend to suggest that one who has accepted such a condition to the grant of probation is thereafter barred from objecting to the unreasonable manner in which that condition is carried out by police officers. For example, a probationer who claims unlawful harassment by officers in executing a search may seek appropriate relief from the trial court, including an amendment of the order of probation. [Citation.] Defendant makes *no such claim in the instant case.*" (*Id.* at p. 765, fn. 3.)

The Supreme Court, in view of the impingement on a constitutional right, cautioned: "Where a condition of probation requires a waiver of precious constitutional rights, the condition must be narrowly drawn; to the extent it is overbroad it is *not* reasonably related to the compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights." (*Id.* at p. 768.)

The Supreme Court, finally, points out the factual nexus which justifies this particular condition based on a drug conviction: "The high recidivism rate for narcotics offenders makes the instant probation condition particularly appropriate in narcotics cases. A recent California study indicates that 'Over half (53 percent) of all drug offenders arrested in 1960 were rearrested for some type of drug offense within the next five years.' (State of California Department of Justice, Follow-up Study of 1960 Adult Drug Offenders (1968), p. 2.)" (*Id.* at p. 764, fn. 2.)

The California Supreme Court in *People* v. *Giminez,* 14 Cal.3d 68, 71, fn. 3 [120 Cal.Rptr. 577, 534 P.2d 65], again points to the propriety of a waiver of Fourth Amendment rights where the grant of probation is to a narcotics offender: "Such a search provision may properly be imposed as a condition to probation *where the defendant is a narcotics offender.* [Citation.]" (*Ibid.*; italics added.)

In *People* v. *Lent, supra,* 15 Cal.3d 481, 486-487, Lent was convicted of one count of grand theft but was acquitted of a second. The trial court imposed, as a condition of probation, restitution as to the amounts charged in both counts. The Supreme Court analyzed and followed the *Dominguez* requisites holding "restitution cannot be based on mere civil claims; it must relate to past or future criminal conduct." (*Id.* at p. 487.) The Supreme Court found "prolonged probation hearing" of nearly two days authorized the trial court's finding of "culpability," and a relationship between past or future criminal conduct. (*Id.* at p. 487.)

Most recently, the California Supreme Court again followed the *Dominguez* reasoning and language in *People* v. *Richards, supra,* 17 Cal.3d 614, declaring: "If a restitution order is to redirect a defendant to acceptance of responsibility for the crime he has committed, *the order must be directly related to that crime.* [Citation.] It is obvious that unless the act for which the defendant is ordered to make restitution was committed with the same state of mind as the offense of which he was convicted, this salutary rehabilitative effect cannot take place. *No rehabilitative purpose can be served by forcing a person to confront tendencies which differ from those which induced his crime.*" (*Id.* at p. 622; italics added.) And further observed: "California courts have traditionally been wary of using the probation system for any nonrehabilitative purpose, no matter how superficially rational." (*Id.* at p. 621, fn. 4.)

In the appellate courts, the *Dominguez* restraints have been uniformly followed. In *People* v. *Kay,* 36 Cal.App.3d 759 [111 Cal.Rptr. 894, 173

A.L.R.3d 1235], a search condition was imposed in granting of probation for a felony assault and battery. The appeal court held (with an exception not applicable) the condition was not reasonably related to the crime for which appellant was convicted and therefore was invalid.

In *People* v. *Constancio,* 42 Cal.App.3d 533, 539 [116 Cal.Rptr. 910], the record was "totally silent" as to the nature of the offense giving rise to the probation and its search condition. Constancio did not (as Keller here does): ". . . contend that the imposition of the probation search condition was not a reasonable exercise of the probation court's broad discretion to impose restrictive conditions to foster rehabilitation and to protect public safety. Such a challenge could not be maintained on the instant record which is totally silent as to the nature of the probation offense. Accordingly, *we assume the condition was fitting and proper for the reformation and rehabilitation of the probationer in relation to the offense for which probation was granted.* [Citations.]" (*Ibid.* at fn. 4; italics added.)

In *People* v. *McDowell,* 59 Cal.App.3d 807, 813 [130 Cal.Rptr. 839], again the tests of *Dominguez* were relied upon to authorize a requirement that a cutpurse, as a condition of probation, wear leather shoes with metal taps on the toes and heels when he departs from his house. The appellate court held this precise wording too broad. McDowell would be precluded from participating in such forms of athletic activity as tennis, baseball, football, golf and bowling, and to that extent the condition was not reasonably related to the crime. However, the court did indicate such a condition "bears a direct relationship to appellant's budding career as a purse snatcher." (See also *People* v. *Bremmer,* 30 Cal.App.3d 1058 [106 Cal.Rptr. 797]; *In re Mannino,* 14 Cal.App.3d 953 [92 Cal.Rptr. 880, 45 A.L.R.3d 996].)

The law review commentators see as principles controlling the sentencing judge: (1) the condition of probation must be reasonably related to the proven offense and (2) it must be aimed at deterring similar violations in the future. (White: *The Fourth Amendment Rights of Parolees and Probationers* (1969) 31 U.Pitt.L.Rev. 167; Polonsky, *Conditions of Probation, supra,* 8 Ga.L.Rev. 466, 477-483; French, *Search and Seizure,* 14 Santa Clara Law. 153, 156-159; Jones, *Decriminalization,* 13 San Diego L.Rev. 804, 813-822; Hanscom, *Probation—The Quiet Revolution,* 50 State Bar J. 182.)

No case has been submitted which deals with the precise factual issue here presented. However, in *People* v. *Kasinger,* 57 Cal.App.3d 975, 977-978 [129 Cal.Rptr. 483], a waiver of search condition was imposed in granting of probation for felony grand theft. The appeal court said: "A condition requiring submission to search is related to the crime of grand theft; hence, the condition was valid." (*Ibid.*) This statement is without analysis of the problem or citation of authority. Further the validity of the condition to pass either statutory or constitutional muster was not challenged in *Kasinger.* Rather, Kasinger contended the search was not "reasonable" where the officer suspected him of trafficking in narcotics. We must assume the condition was fitting and proper for Kasinger's reformation on the offense for which he was granted probation.

 This traverse of applicable law leads to these conclusions: (1) the probationer cannot be subjected on the "voluntary consent" theory to *any* condition, *any* deprivation, of right, constitutional or not, the trial judge may conceive; (2) the probationer who has reduced his expectation of privacy by an appropriate waiver of his Fourth Amendment rights (as is authorized in a factual situation found in *People* v. *Mason*) is not left totally naked, bereft of all constitutional protection (*People* v. *Mason, supra,* 5 Cal.3d 759; *United States* v. *Consuelo-Gonzalez, supra,* 521 F.2d 259; *People* v. *Superior Court (Stevens),* 12 Cal.3d 858, 861 [117 Cal.Rptr. 433, 528 P.2d 41]); (3) the condition of probation must be "directly" or "reasonably" related to the crime proved to have been committed; (4) there must exist a "reasonable relationship" between the condition imposed and deterring future similar criminality; (5) where the terms of probation authorize an invasion of a constitutional right, the condition must be "narrowly drawn"; to the extent it is not reasonably related to the offense to which the probationer pleaded it is overbroad; (6) the broad power granted the sentencing judge does not authorize through a "consent" or "waiver" process the imposition of conditions of probation for "rehabilitative" purposes not related to the offense of which the probationer stands convicted, no matter how superficially rational they appear; and (7) both the statute and Constitution mandate the conditions be *reasonable,* reasonable in proportion, as well as reasonably related, to the crime committed.

 Keller pleaded to petty theft, no more—no less. Nothing suggests any drug relationship to the theft of a ballpoint pen. There was no evidence, only speculation, that such connection exists. Without evidence, the trial court made an assumption the petty theft here involved in some fashion was related to a drug involvement of Keller.

The probation officer's report does not support the sentencing judge's imposition of "narcotics conditions." Rather the search condition was imposed for a drug status—not admitted, not proven. There is no evidence of any hearing, evidence taken, to establish the nexus as was present in *People* v. *Lent, supra,* 15 Cal.3d 481. The waiver of Fourth Amendment rights, the imposition of "narcotics conditions," so far as here appears, had no relation to the crime to which Keller did plead guilty. The People have a burden to justify the legality of the search where there has been a warrantless search. They have not carried that burden. (*Freytes* v. *Superior Court,* 60 Cal.App.3d 958, 961 [132 Cal.Rptr. 26]; *People* v. *Constancio, supra,* 42 Cal.App.3d 533.)

■ Furthermore, when a condition unquestionably restricts otherwise inviolable constitutional rights, it is properly subjected to "special scrutiny" to determine whether the limitation, the condition of probation, does in fact serve the dual purpose of rehabilitation and public safety. (*United States* v. *Consuelo-Gonzalez, supra,* 521 F.2d 259, 265.)

■ In *People* v. *Constancio, supra,* 42 Cal.App.3d 533, 540, a rationale offered to support a search condition imposed in granting probation for theft was: ". . . drug offenders frequently commit burglary and theft as a means of funding their illegal activities with drugs." (*Ibid.*) Such observation is an axiom in the drug other-world; yet it has no application here. The reason? There is no evidence, or even "hearsay," from the probation officer's report, that theft of a 49-cent pen was causally related to Keller's (speculated) activity in the drug area. No evidence establishes this necessary nexus.

This lack of proximal link is further demonstrated in the language of the trial judge in ruling upon Keller's section 1538.5 motion: "Well, it's petty theft, it's true; but it's theft, it's some indication of the type of life that he was leading, of his carelessness with regard to taking other persons' property. It is an indication that his narcotics life had an influence on his stealing or theft to some degree." Such reasoning is circuitous—bootstrappery. It does not stand up to "special scrutiny" justifying removal of a precious constitutional right.

Finally, the Constitution, the statute, all case law, demand and authorize only "reasonable" conditions, not just conditions "reasonably related" to the crime committed. In the concurring opinion in *United States* v. *Consuelo-Gonzalez, supra,* 521 F.2d 259, Judge Hufstedler (author of the landmark *Dominguez* decision) said: "I concur in the

majority's rationale that (1) the district court's broad discretion in imposing conditions of probation is subject to the limitations that no condition of probation can be imposed that *is not reasonably related to the rehabilitative purposes of the Federal Probation Act* (18 U.S.C. § 3651) and to the legitimate needs of law enforcement in protecting the public; and (2) *a condition of probation that infringes a probationer's constitutionally protected right to be free from unreasonable searches and seizures cannot be deemed to be reasonable.* The condition of probation in question failed on both counts and therefore could not be relied upon to justify this search." (*Id.* at p. 267; italics added.)

While *People* v. *Mason, supra,* remains the law we may not join in a conclusion of such breadth.[3] However a reasonable condition of probation is not only fit and appropriate to the end in view but it must be a *reasonable* means to that end. Reasonable means are moderate, not excessive, not extreme, not demanding too much, well-balanced. (Webster's Third New Internat. Dict., p. 1892; Black's Law Dict., p. 1431.)

If a waiver of Fourth Amendment rights in relation to a plea to a 49-cent petty theft—no more—is reasonable in the latter sense, it could be equally reasonable on conviction of misdemeanor drunk, drunk driving, Vehicle Code licensing infractions, or Fish and Game Code offenses. The probation condition here imposed, the waiver of a precious constitutional right resting solely upon plea to theft of a 49-cent ballpoint pen reaches for parallel, the use of a Mack truck to crush a gnat. In this further sense the condition cannot be deemed reasonable.

Judgment reversed.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied January 31, 1978, and respondent's petition for a hearing by the Supreme Court was denied March 9, 1978.

---

[3] The six-judge majority in *United States* v. *Consuelo-Gonzalez, supra,* raises a question concerning the "precise holding" and constitutionality of *Mason,* but stops short stating ". . . it is not our intention to express an opinion concerning its constitutionality." (*United States* v. *Consuelo-Gonzalez, supra,* 521 F.2d 259, 266, fn. 17.) Scholarly opinion has not been so reticent. (See Polonsky, *Conditions of Probation, supra,* 8 Ga.L.Rev. 466, 483.)