# DELORES MARIE MASON *v.* STATE OF MARYLAND

[No. 1216, September Term, 1979.]

*Decided June 13, 1980.*

The cause was submitted on briefs to MOYLAN, MELVIN and WILNER, JJ.

Submitted by *Harold Buchman, Assigned Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Alexander L. Cummings, Assistant Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Robert L. Dean, Assistant State's Attorney for Montgomery County,* for appellee.

MOYLAN, J., delivered the opinion of the Court.

The single issue before us on this appeal is the permitted breadth of an order of restitution. May a convicted thief (we use that term in its broadest and most informal sense) be required, as a condition of probation, to make restitution to the world for his multitudinous peculations or must the restitution be limited by the losses established in the actual case, the conviction as to which serves as the predicate for the sentence? We hold that the latter is the appropriate and legally required limitation upon court-ordered restitution.

The appellant, Delores Marie Mason, owned and managed an antique shop in the District of Columbia. During the summer of 1978, her antique business fell upon hard times. Her straitened circumstances embroiled her in a series of questionable financial manipulations, some of which were involved in the case now before us and some of which were not. She was convicted in the Circuit Court for Montgomery County upon the first count of a single indictment, charging embezzlement from Mr. and Mrs. Kenneth Bennett in the amount of $3,949.61. Following the submission of a presentence investigation and a sentencing hearing, a sentence of three years was imposed and then suspended, with five years of supervised probation substituted therefor with the additional condition that restitution be made. This appeal concerns the terms of that restitution.

Guilt in the Bennett case is beyond dispute. In preparation for a move to Florida, Mr. and Mrs. Bennett contacted the appellant and arranged for her to sell much of the furniture and other objects accumulated by them during their 40 years of marriage. The appellant was to receive a 10 percent commission on gross sales. Two sales were in fact conducted, the first on July 22 and 23, 1978, and a follow-up sale on July 30. The proceeds from the sale were received by the appellant and deposited into her business account. Four days later, the appellant made out a personal check to the Bennetts in the amount of $3,949.61. This was indisputably the correct amount. Unfortunately, the check bounced and bounced again and was never honored. Although the appellant testified about her good intentions and

unanticipated difficulties, she was found guilty of embezzlement of $3,949.61.

Following her conviction on July 17, 1979, sentencing was scheduled for September 25, 1979. At the sentencing hearing, the State called two witnesses, by way of supplementing and elaborating upon matters brought out in the presentence investigation. One of these was Detective Everett C. Oberheim of the Major Crimes Section of the Metropolitan Police Department of Washington, D.C. He indicated that he had had occasion to investigate the appellant's antique business and that he had talked with approximately 50 persons who apparently had placed goods with the appellant on consignment and still had unpaid claims as a result of the consignment sales.

The second witness called by the State was a Mrs. Edgar Swagee, a resident of Bethesda, who testified that in December of 1977 she had lost over $1,000 at the hands of the appellant under circumstances very similar to those involved in the Bennett case.

With evidence as to these additional dealings before him, the sentencing judge approached the subject of restitution and probation. It was clear that the restitution implicated the Swagee case, which had never been charged or tried, as surely as it did the Bennett case, not to mention the numerous unpaid cases from the District of Columbia:

> "It is the sentence of this Court that you be committed to the Department of Corrections for a period of three years. I'm going to suspend the sentence, and I do it only for one reason, precisely what you have said, that to put you in jail is not going to get them their money, but if I hang it over your head, maybe it's going to force you to get it.
>
> . . .
>
> What could you think when you had the lady who just testified, Mrs. Swagee. Here is a widow who in order to get funds trusted you with the goods she has accumulated over her life, and you take the funds from those and don't pay them over directly to

her? The people who go to Florida, granted they may be in a sufficient financial position that the hurt is not as great to them, but it is no less."

The final order of restitution clearly suggested that the claims investigated by the Metropolitan Police Department and alluded to by Detective Oberheim were to be the subject of restitution as well, as ultimately determined by the probation department:

"Now, the condition of the suspension of that [sentence and the placing of you on] probation is that restitution be made in this amount in this case in the full amount of $3,949.61; that thereafter a plan of restitution be devised through the Department of Parole and Probation that you make additional payments of restitution to all of the valid claims in this matter.

Now, that means that you are going to be required to gain employment and to be determined by the Probation Department is how much of that money can be set aside and put generally into a fund.

Since I cannot have the testimony as it applies to enhancement of sentence from the detective, I cannot make out a total amount, and I strongly suspect that there cannot be enough income to pay them off, but it can be paid into a fund to be disbursed to them."

Appellant's counsel sought clarification from the court as to what claims were being made the subject of the restitution order and as to what period of time was covered by these claims. The court's attempted clarification was open-ended in the extreme, not limiting restitution to the Bennett case, not limiting the "other claims" to those involving citizens of Maryland, not limiting the claims to those accruing within a specified time period and not limiting the liability of the appellant even to those incurred in the antique business:

"THE COURT: I'm talking about all of the — let

me rephrase it — claims; but to all of those persons whom she had directly taken money from, not just claims against the corporation but whom she had directly taken goods either on consignment of under the circumstances as they occurred in this incident when she was acting in a fiduciary agent capacity taking the money that belonged to somebody else and was not turned over to them. And she is to make payments on all of those.

MR. TSITOURIS: I realize what the Court is trying to do, but I'm trying to get a time limitation. Are we talking about the time Mason Antiques has been in business?

THE COURT: She is to make restitution on all of the people that she personally has cheated.

MR. TSITOURIS: I have some difficulty regarding that."

Three separate provisions of Maryland statute law are here pertinent. The more general and basic power of a court to place conditions on the granting of probation is contained in Art. 27, § 641A, which reads, in part:

"Upon entering a judgment of conviction, the court having jurisdiction, may suspend the imposition or execution of sentence and place the defendant on probation upon such terms and conditions as the courts deem proper."

The subject of restitution is dealt with generally by Art. 27, § 640 (b):

"(b) *Restitution may be ordered upon conviction of certain crimes.* — Upon conviction for a crime where property of another has been stolen, converted, unlawfully obtained, or its value substantially decreased as a direct result of the crime, or whether the victim suffered actual medical expenses, direct out of pocket losses, or loss of earning as a direct result of the crime, the court may order the defendant to make restitution in

addition to any other penalty provided for the commission of the crime."

Even more specifically, Art. 27, § 145 dealt with restitution to the owner in cases involving fraud, false pretenses, embezzlement, etc.[1] It read as follows:

"When any person shall be convicted of any statutory felony or misdemeanor, for the false or fraudulent obtention or embezzlement, secreting or making way with goods, chattels, valuable effects, money or securities, the court before whom any such conviction shall be had *may award restitution to the real owner thereof;* provided, however, that no bona fide holder thereof shall be obliged to surrender up the same." (Emphasis added).

The issue now before us is one of first impression. Although the Maryland statutes do not, in terms, preclude the granting of restitution for other crimes not charged or proved, the clear sense of § 640 (b) and § 145 seems unmistakably to contemplate restitution for the crimes as to which incarceration might otherwise be imposed. In this regard, the experience and wisdom of our sister common-law jurisdictions helps to persuade us that this is clearly the correct result. The precise situation was before the Supreme Court of Illinois in *People v. Mahle,* 57 Ill. 2d 279, 312 N.E.2d 267 (1974), with the court there holding, at 312, N.E.2d 271:

"We do not believe that the conditions of restitution may extend to matters unrelated to the charges before the court. The trial court was not empowered [under the Illinois statutes] to order restitution of sums extraneous to the informations before it."

---

1. By 1978 Md. Laws, ch. 849, this then-existing § 145 was repealed (not re-enacted) as part of the general consolidation and revision of the theft-related offenses. The new theft law, repealing § 145, was effective July 1, 1979. It has no effect, however, on the instant case, since § 7 of ch. 849 makes it clear that "this Act shall be construed only prospectively and the provisions of this Act apply only to offenses committed on or after the effective date of this Act. . . ." Since the offenses were committed in July, 1978, the Act does not apply.

In *State v. Eilts,* 23 Wash. App. 39, 596 P.2d 1050 (1979), the Court of Appeals of Washington was dealing with a situation wherein a defendant had been convicted of nine counts of stock fraud and selling unregistered securities but was ordered, as a condition of probation, to "make full restitution to all — about 100 — persons who purchased stock from him." In striking down this order of restitution as beyond the power of the trial court to impose, the Court of Appeals said, at 596 P.2d 1053:

> "The State contends that '[t]he "crime in question" in this instance is fraud in the offer and sale of a security to the public.' It reasons that all investors who purchased stock from Eilts are victims of the 'crime in question,' and that the named count victims are only representative of the entire class of victims. We find no merit in the State's reasoning.
>
> . . .
>
> The State has not proved — and Eilts does not admit — that he acted with fraudulent intent toward the unnamed purchasers of American General Industries stock. Although they are victims in the sense that they exchanged their money for what turned out to be worthless stock, it cannot be said that they are the victims of a 'crime.' "

In *State v. Reese,* 124 Ariz. 212, 603 P.2d 104 (1979), the Court of Appeals of Arizona dealt with a situation wherein a defendant was ordered to make restitution not simply in the burglary for which he had been convicted but also with respect to other victims, as to some of whom charges had been dismissed and as to others of whom charges had never been filed. In striking down that order of restitution, the Court of Appeals stated, at 603 P.2d 107:

> "Under our system it would be untenable to incarcerate or impose a fine upon a defendant without an adjudication of guilt in accordance with

due process of law. Although restitution to a victim of crime is not a criminal punishment exacted by the state, it must nevertheless rest upon due process of law. Therefore, it is equally untenable to impose a requirement of restitution upon a defendant whose responsibility for the crime has neither been admitted nor established in accordance with due process. The requirement that a defendant make restitution under such circumstances would reduce our system of justice to a potentially dangerous facade and convert the criminal court into a collection agency with none of the requirements of due process found even in a civil money judgment proceeding."

In *People v. Richards,* 131 Cal. Rptr. 537, 552 P.2d 97 (1976), the Supreme Court of California dealt with a cognate situation. There a defendant was ordered to make restitution not only in the case on which he was convicted but also in a companion case on which he had been acquitted. Although factually that situation could be distinguished from the one at bar, the general philosophical observations of Justice Mosk are, nonetheless, pertinent. He said for the court, at 552 P.2d 101:

"Disposing of civil liability cannot be a function of restitution in a criminal case. To begin with, the criminal justice system is essentially incapable of determining that a defendant is in fact civilly liable, and if so, to what extent. A judge may infer from a jury verdict of guilt in a theft case that a defendant is liable to the crime victim. But a trial court cannot properly conclude that the defendant owes money to a third party for other unproved or disproved crimes or conduct. A party sued civilly has important due process rights, including appropriate pleadings, discovery, and a right to a trial by jury on the specific issues of liability and damages. The judge in the criminal trial should not be permitted to emasculate those rights by simply

declaring his belief that the defendant owes a sum of money."

We hold that in this case the restitution ordered in the amount of $3,949.61 to Mr. and Mrs. Bennett was legal but that the open-ended order to make additional restitution to a wide variety of "victims" to be determined by the probation department and in amounts to be determined by the probation department exceeded the sentencing authority of the court.[2]

> *Order to make restitution in excess of $3,949.61 as a condition of probation vacated; costs are not reallocated as part of the judgment of this Court pursuant to Md. Rule 1082 f.*

---

**2.** In view of our disposition of the case on the above ground, it is unnecessary to deal with the appellant's additional contention that the order of restitution offended her right to due process because of its vagueness and because of its delegation of authority to the probation department. In this regard, however, see *Cothron v. State,* 377 So. 2d 255 (Fla. Dist. Ct. App. 1979):

"[T]he trial court erred in imposing a requirement that appellant pay restitution in an amount to be determined by his probation supervisor.

It was improper for the trial judge to delegate to the probation supervisor the authority to determine the amount of restitution appellant must pay. . . . Appellant is entitled to a hearing before the trial court to determine the amount of restitution."

And see *Cox v. State,* 445 S.W.2d 200 (Tex. Crim. App. 1969), at 201:

"The condition that the appellant 'Make restitution as and when directed by the probation officer * * *' is an unauthorized delegation of authority in that it permitted the probation officer to determine the terms of probation and a failure to comply cannot be used to revoke probation. The conditions of probation should be clearly set out in the probation order by the judge granting probation so that the probationer and the authorities may know with certainty what the conditions are."