Filed 3/16/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.S.,<br><br>    Defendant and Appellant. | A144487<br><br>(Alameda County<br>Super. Ct. No. SFJ14024003) |

**I.**

**INTRODUCTION**

In this appeal from a disposition order declaring her a ward of the juvenile court, A.S. (appellant) challenges two conditions of her probation. The first challenged condition required appellant to submit her "electronics including passwords under [her] control" to warrantless searches by the probation department and law enforcement (electronic search condition). Second, appellant challenges a probation condition which prohibited her from unauthorized or unsupervised presence on school property (school grounds condition).

Appellant is not the first minor to object to an electronic search condition. In fact the juvenile court judge who imposed this condition on appellant is the same beleaguered judge whose substantially identical electronic search condition was: stricken by Division Two of this appellate district in *In re Erica R.* (2015) 240 Cal.App.4th 907 (*Erica R.*) and in *In re Mark C.* (2016) 244 Cal.App.4th 520 (*Mark C.*); not stricken but found to be overbroad and modified by Division Three in *In re Malik J.* (2015) 240 Cal.App.4th 896,

1

899-900 (*Malik J.*); stricken by that same division in *In re J.B.* (2015) 242 Cal.App.4th 749 (*J.B.*); not stricken but found to be overbroad and remanded to the juvenile court for modification by Division One in both *In re Ricardo P.* (2015) 241 Cal.App.4th 676 (*Ricardo P.*) and *In re Alejandro R.* (2015) 243 Cal.App.4th 556; and not stricken but found to be overbroad and modified by Division Five in *In re Patrick F.* (2015) 242 Cal.App.4th 104 (*Patrick F.*)[1]

Under the particularized facts of this case, we conclude that the electronic search condition as applied to appellant is reasonable under the test established by *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), and is not unconstitutionally overbroad. Accordingly, we affirm the imposition of this probation condition. However, we agree with appellant that the school grounds condition is unconstitutionally vague because it does not incorporate a "knowledge" requirement so as to prohibit the unauthorized or unsupervised presence on property she knows is school property. We order that probation condition modified accordingly.

## II.
### PROCEDURAL AND FACTUAL BACKGROUNDS

#### A. *The Wardship Petition and Appellant's Detention At Juvenile Hall*

On December 19, 2014, the Alameda County District Attorney filed a juvenile wardship petition under Welfare and Institutions Code section 602,[2] alleging that 17-year-old appellant committed a misdemeanor assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)). The alleged victim of the crime was appellant's mother (mother).

---

[1] On February 17, 2016, the Supreme Court granted review in both *In re Ricardo P.* (S230923) (2016 Cal.LEXIS 1016) and *In re Patrick F.* (S231428) (2016 Cal.LEXIS 972). In addition to these decisions, in the last nine months this appellate district has filed a host of nonpublished decisions relating to this same electronic search condition imposed by the Alameda County Juvenile Court.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

According to the probation department's intake report, on December 17, 2014, Oakland police responded to a report of a family disturbance and battery at mother's home. When they arrived mother had visible swelling to her left eye. She reported that appellant had been away for several days but had returned home and caused a disturbance. When mother tried to stop appellant from taking property from the home that did not belong to her, appellant cursed at and threatened mother, saying "I'm going to take these, get the fuck up out of my way, bitch. I'll kill you!" She then caused mother to slip and fall, grabbed her, dragged her out of the house, and punched her in the face multiple times with a closed fist. Neighbors tried to intervene without success. Mother crawled back into the house, but appellant continued to threaten her through the window until police arrived and arrested her. Mother further claimed there were two prior unreported incidents when appellant assaulted her. In addition, appellant, who had been diagnosed at age 13 as having bipolar disorder, had not attended school for more than a year, came and went from the home as she pleased, smoked marijuana, and was out of control. The probation department recommended that, despite appellant's "minimal record," the severity of the attack on mother and the need to protect mother's safety warranted that appellant be detained until disposition.

On December 22, 2014, the juvenile court ordered appellant detained for her own protection and the protection of others. Crisis intervention was ordered and the matter was continued to the next day. On December 23, appellant admitted the allegation in the section 602 petition and the juvenile court exercised jurisdiction over her. Pending disposition, it was ordered that appellant remain in juvenile hall for the protection of herself and others. A guidance evaluation was ordered, as well as crisis intervention. The disposition hearing was set for January 8, 2015.[3]

---

[3] All further dates are in the calendar year 2015 unless otherwise indicated.

**B.** *Disposition*

### 1. Reports

The probation department's disposition report included summaries of interviews with appellant, mother, and other family members. Appellant reported having "issues" with mother since she was 12, and that her sister and grandmother also had poor relations with mother. Appellant's father died before she was born, and she claimed that mother had kicked her out of the home approximately four times since she was 14. Around that time, appellant was diagnosed with depression and was prescribed Prozac. But, she stopped taking it because she did not like the way it made her feel. She received counseling and had been seeing a therapist for about two years. Appellant admitted that she smoked marijuana about two times per month to deal with her stress. She denied using alcohol or other drugs. Appellant told the interviewer that she no longer wanted to live with mother. Appellant's role models were her grandmother and sister. She noted that she did not have friends, but "associates" she met through a youth program. She hoped to go to college like her sister.

Mother reported that appellant had been having behavioral problems since she was in the fourth grade when she started having fights with other students and refused to follow rules. She ran away from home four times since then. Mother also reported that appellant had been using marijuana and alcohol frequently, and was involved romantically with a 23-year-old adult. Appellant had been diagnosed with depression, bipolar disorder, and schizophrenia. Mother was opposed to appellant going to live with her grandmother, who mother suspected was taking drugs, or with appellant's 20-year-old sister (sister), who was unable to look after appellant at night.

Sister was interviewed and reported that she had two jobs and was currently enrolled in college. Like appellant, sister left home at an early age because of conflict with, and alleged physical abuse by, mother. Sister stated she wanted appellant to live with her, and grandmother would share responsibility for appellant by looking after her while sister worked her graveyard shifts.

4

Grandmother was also interviewed and agreed with sister that mother's home was not good for appellant because of their poor relationship. Grandmother reported that mother "is a very violent person," and that sister's home would be a better placement for appellant. Grandmother also said she would find a larger apartment if it was determined that her home was the best placement for appellant.

A risk assessment conducted by the probation department concluded that appellant had a moderate risk of reoffending within a year. The primary concerns were appellant's poor relationship with mother, which had resulted in her living the life of a runaway for relatively long periods, and the fact that she had not attended school for more than one and one-half years. The report concluded that appellant was in immediate need of services to help her resolve her family and social problems. The department did not oppose a placement with either grandmother or sister, but expressed a preference for grandmother due to sister's work schedule. Whatever placement was made, the probation department recommended that appellant be "intensely monitored," and provided with therapy services to help her "get back on track."

Prior to disposition, the Alameda County Mental Health Department evaluated appellant and filed a report.[4] The mental health department concluded that appellant had a moderate degree of emotional disturbance, exhibited in part by a long history of having difficulty with self-regulation in school. It was noted that appellant also had a "high potential for violence towards her mother," and a moderate degree of potential for violence in the community. The report concluded that appellant presented many challenges including mental health, social/behavioral, and educational needs that would

---

[4] The juvenile court referred appellant to the mental health department for a psycho-diagnostic evaluation to determine to what extent appellant was "emotionally disturbed; whether [she] had a potential for violence towards [her]self and others; identification of family dynamics that contributed to or caused [appellant] to have delinquent behavior; whether [appellant] has a substance abuse problem; whether [appellant] needs mental health services; whether [appellant] needs psychological case management; and identification of what type of setting would be most beneficial for [her]."

best be met by a coordinated, multi-disciplinary team. She needed to be in a family setting where her daily activities could be monitored. She also needed intensive therapeutic services, such as day treatment, and a specialized school designed for emotionally disturbed youths. If family placement resulted in inadequate supervision, then a higher level of care, such as a residential treatment facility, should be considered for her.

### 2. The January 8 Hearing

At the January 8 disposition hearing, the court stated that it had considered the relevant reports and then conducted a lengthy discussion about how to secure a placement for appellant outside juvenile hall that would afford her with the "24/7" supervision that she needed. Ultimately, the court elected to make disposition findings and order that appellant be released for placement in sister's home, but to continue the matter for a home visit and to ensure that appellant was going to receive the stability she needed.

The court then adjudged appellant a ward of the court subject to the care, control and supervision of the probation department. As is pertinent here, the court included as conditions of appellant's probation that she not use or possess any drugs, that she submit to regular drug testing, that she not associate with anyone who uses, possesses, or sells drugs, and that she was subject to a "four way search clause" that included her electronic devices and passwords. In addition, the court ordered the following condition of probation: "Not be on the campus or grounds of any school unless enrolled, accompanied by a parent or guardian or responsible adult, or authorized by the prior permission of school authorities."

When the juvenile court announced that appellant was subject to an electronic search condition, her trial counsel produced a legal brief opposing the condition and requested a hearing on the matter. The brief discussed a number of cases concerning the court's power to impose conditions of probation, and decisions extant at the time that dealt with electronic privacy generally, including the then-recent United States Supreme Court case of *Riley v. California* (2014) 134 S.Ct. 2473. However, the brief included no information about how the electronic search clause might impact appellant's privacy

rights in particular, nor did it suggest how the clause might be made more specific while still meeting the concerns of the juvenile court.

The juvenile court continued the matter for a hearing so the People would have time to respond in writing. In the meantime, the court imposed the electronic search condition. It also referred appellant to anger management and placed her on "home supervision."

### 3. Progress Report

The probation department filed a progress report on February 5. By that time appellant had begun receiving therapeutic services through the West Oakland Health Center, and was enrolled in a STARS independent study high school program. The February 5 report noted too that appellant had tested positive for marijuana on January 30, although she denied using the drug. Sister reported no problems in the home, but mother had reported that she had been receiving obscene telephone calls and she suspected appellant and sister were responsible. Both denied the allegations. Mother also showed the probation officer postings from Facebook, which discussed appellant's drug and alcohol use and her relationship with a 23-year-old adult. A home visit to sister's residence revealed that it was well kept with no evidence of drugs or alcohol. It appeared that appellant had made a good adjustment to sister's home.

### 4. The February 27 Hearing

On February 27, after conducting a hearing on appellant's objection to the electronic search condition, the juvenile court affirmed that the condition would be imposed on appellant. The court began its ruling by summarizing factors which indicated that appellant was suffering from "fairly substantial psychological issues," including the fissure between appellant and her mother, appellant's romantic relationship with a 23-year-old adult, her smoking marijuana and drinking alcohol frequently, and her diagnoses of depression, bipolar disorder, and schizophrenia. The court found that appellant's "[d]rug usage issues, issues with regards to her safety, also in the area of where she's going to stay, and with the fact she at that time was not yet 18 years old and had been

7

involved in a relationship with a 23-year-old adult shows clearly that she needs to be monitored as closely as possible."

The juvenile court also made reference to the fact that appellant used Facebook, which would provide a means for the court to monitor "conduct which can endanger her, conduct which will be a violation of probation terms and conditions." In this regard, the court took particular notice of the reality that many minors on probation use electronics and the Internet as their primary form of communication. In light of that reality, the court concluded that monitoring appellant's use of electronic devices was necessary to give the court the kind of supervision that was needed to ensure appellant's success on probation. Indeed, in light of this broad range of issues, the juvenile court expressed substantial concern whether appellant's wardship could be successfully supervised and the developmental dangers appellant faced could be successfully monitored without electronic monitoring.

Appellant's counsel was provided an opportunity to address the electronic search clause, and did so by stating there was no valid legal basis for its imposition. During his brief argument counsel made a general reference to the fact that appellant used a cell phone and had access to social media. However, once again counsel did not specify how the clause would impact appellant's particular privacy interest, nor did counsel offer any suggestion as to how the clause might be narrowed to minimize intrusion on appellant's privacy while serving the interest of the juvenile court in preventing future criminality and facilitating the supervision of appellant's probation.

After hearing from counsel, the court denied the motion to strike the electronic search condition.

### III.

### DISCUSSION

#### A.  *Legal Principles and Standard of Review*

Section 730, subdivision (b) authorizes the juvenile court to "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."

" 'A juvenile court enjoys broad discretion to fashion conditions of probation for the purpose of rehabilitation and may even impose a condition of probation that would be unconstitutional or otherwise improper so long as it is tailored to specifically meet the needs of the juvenile.' [Citation.] In *In re Victor L.* (2010) 182 Cal.App.4th 902 . . . , the court explained, ' "The state, when it asserts jurisdiction over a minor, stands in the shoes of the parents" [citation], thereby occupying a "unique role . . . in caring for the minor's well-being." [Citation.] . . . [¶] The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults. "[E]ven where there is an invasion of protected freedoms 'the power of the state to control the conduct of children reaches beyond the scope of its authority over adults . . . .' " [Citation.] This is because juveniles are deemed to be "more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed." ' (*Id.* at pp. 909–910.) The reasonableness and propriety of the imposed condition is measured not just by the circumstances of the current offense, but by the minor's entire social history. [Citation.]" (*J.B.*, *supra*, 242 Cal.App.4th at pp. 753-754.)

However, while the juvenile court's discretion is broad, it is not unlimited. "A probation condition is invalid if it: ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' ([*Lent*, *supra*,] 15 Cal.3d [at p.] 486 . . . .) In order to invalidate a condition of probation under the *Lent* test, all three factors must be found to be present. [Citations.] This three-part test applies equally to juvenile probation conditions. [Citation.]" (*J.B.*, *supra*, 242 Cal.App.4th at p. 754.)

"In addition, a juvenile court may not adopt probation conditions that are constitutionally vague or overbroad. [Citations.]" (*Malik J.*, *supra*, 240 Cal.App.4th at p. 901.) "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness. [Citation.] A probation condition that imposes limitations on a person's constitutional rights must

9

closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad. [Citation.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).)

"We review the juvenile court's probation conditions for abuse of discretion, and such discretion will not be disturbed in the absence of manifest abuse. [Citation.] But '[w]hile we generally review the court's imposition of a probation condition for abuse of discretion, we review constitutional challenges to probation conditions de novo.' [Citation.]" (*J.B.*, *supra*, 242 Cal.App.4th at p. 754.)

## B. *The Electronic Search Condition Is Reasonable and Constitutional*

### 1. The *Lent* Test

As noted above, the same electronic search clause challenged by appellant has been addressed in several recent First District Court of Appeal decisions. The analytical touchstone for all of the cases referred to in our Introduction, as well as others decided in the relatively short time that appellate courts have been scrutinizing electronic search clauses as conditions of juvenile probation, are the three so-called *Lent* factors summarized above. In virtually all cases, it is the third factor, whether the condition is " 'reasonably related to future criminality' " (*Lent*, *supra*, 15 Cal.3d at p. 486), that garners the most jurisprudential attention.

And so it is here. The Attorney General does not argue forcefully or convincingly that the electronic search clause condition imposed in this case was related to the crime for which appellant was adjudicated to be a ward of the court—that crime was a physical assault on appellant's mother.[5] Nor does the Attorney General argue that the electronic search clause related to conduct that is itself criminal. Like virtually all other cases involving challenges to this probation condition, it is the third *Lent* factor that is at issue.

---

[5] The Attorney General does make reference in her brief to the unproven allegation by mother that appellant and her sister were the source of obscene telephone calls she had been receiving since the wardship petition was filed. However, this speculation does not satisfy the first *Lent* factor as having a "relationship to the crime of which the offender was convicted.' " (*Lent*, *supra*, 15 Cal.3d at p. 486.)

10

At the February 27 hearing on appellant's objection to the electronic search condition, the juvenile court spoke in detail about the circumstances that created a serious challenge to appellant remaining crime-free while on probation:

"Going back to the dispositional report dated January 8th, 2015, the report itself on page 3 states that [appellant] stated that she no longer wants to live with her mother . . . but has concerns that her mother will not allow her to see her brother, and that the mother on page 4 stated that [appellant] was involved in a romantic relationship with a 23-year-old female, that [appellant] was smoking marijuana and drinking alcohol frequently, and [appellant] has been diagnosed with depression, bipolar [disorder], and schizophrenia, not inconsistent with the Guidance Clinic report, and that she was hospitalized in November of 2014 due to smoking quote laced marijuana.

"So there are clearly some fairly substantial psychological issues: Drug usage issues, issues with regards to her safety, also in the area of where she's going to stay, and with the fact she at that time was not yet 18 years old and had been involved in a relationship with a 23-year-old adult shows clearly that she needs to be monitored as closely as possible. And this situation, as the cases do allow, the probation terms and conditions designed to monitor such issues that we have, they're designed in this particular case, I believe they're designed to monitor the terms and conditions to be of good conduct, obey all laws, the drug conditions, school conditions, curfew, where she's going to be, as well as her safety.

"And this person who clearly uses Facebook, that's one version of the various electronics that are available to her. And as the cases that are cited by [appellant's counsel] do indicate, that these types of terms and conditions are reasonable, because we're clearly looking at future criminality, we're clearly looking at conduct which can endanger her, conduct which will be a violation of probation terms and conditions."

After briefly discussing several cases upholding the condition, the juvenile court made additional references to the record evidence supporting imposition of the clause in this case:

11

"And one of the things that we have in dealing with our minors here on probation is that they are very directly tied to electronics. In so many ways it governs their life, but it certainly is the primary way they communicate. They communicate more by electronics than by face-to-face contact. And we can put them—short of putting them in the Hall when we have them outside, we can put them—even on GPS, we can put them on our ankle bracelet for electronic monitoring. That's still not going to give us the kind of supervision that we need, that being able to access their electronics using their passwords would provide to us."

The juvenile court then recited record evidence concerning appellant's tenuous home life and social choices that supported the need for close monitoring, including electronic monitoring:

"And in this particular case, she really has some criminality issues with regards to drugs. She has safety issues with regards to her behavior and her lack of relationship. She basically—as you said, [minor's counsel], I agree she has a dysfunctional relationship with her mother. She's living now with her sister, who is very impressive. She's very, very solid. I'm so happy she's been able to step forward. She has two jobs herself. She's only a couple years older. She's 20 years old. Just turned 20 February 19th. As impressive as she is, there's a lot to be expected of her. She's not going to be able to have the kind of direct supervision we're going to need because of her own situation.

"There's a grandmother who is also there, and she's—she seems to be helpful, but she's on the periphery, and she's going to be able to supplement.

"There's going to be a lot of concerns about being able to supervise [appellant], and this prior relationship with this adult female circling, it obviously gives me great concerns with regards to what danger the female may pose to her and a lot of drugs. There's a lot of issues that [appellant] has, and without her ability, my ability, to monitor her with electronics and passwords, we're not going to be able to appropriately help her be successful on probation.

"For those reasons, the motion to modify probation terms and conditions, to delete the search of electronics and passwords, is denied."

These facts amply justify imposition of the electronic search condition in this instance. Other cases from this appellate district referred to in our Introduction do not command otherwise. Indeed, Division Two specifically emphasized that its holding striking an electronic search clause in *Erica R.*, *supra*, 240 Cal.App.4th 907 was not intended to be a blanket precedent condemning such probation conditions under all circumstances: "Our holding is narrow. Of course, there can be cases where, based on a defendant's history and circumstances, an electronic search condition bears a reasonable connection to the risk of future criminality." (*Id.* at p. 914.) In this case, appellant's history and circumstances mandate a degree of supervision which reasonably connects the electronic search condition to the prevention of future criminality.

Our Supreme Court also has placed its imprimatur on the concept that conditions of probation that facilitate supervision of the probationer can justify their imposition. In *People v. Olguin* (2008) 45 Cal.4th 375, the defendant challenged a condition of probation that required the probationer to "notify his probation officer of the presence of any pets at [the] defendant's place of residence." The defendant contended the challenged condition was not reasonably related to future criminality, limited his fundamental rights, and was unconstitutionally overbroad. (*Id.* at p. 378.) The high court disagreed, noting that "[p]robation officers are charged with supervising probationers' compliance with the specific terms of their probation to ensure the safety of the public and the rehabilitation of probationers. Pets residing with probationers have the potential to distract, impede, and endanger probation officers in the exercise of their supervisory duties. By mandating that probation officers be kept informed of the presence of such pets, this notification condition facilitates the effective supervision of probationers and, as such, is reasonably related to deterring future criminality." (*Ibid.*) We reach a parallel conclusion under these facts; the electronic search condition is reasonably related to deterring future criminality because it facilitates the type and level of supervision of appellant which is absolutely necessary for her to succeed on probation.

13

*People v. Ebertowski* (2014) 228 Cal.App.4th 1170 (*Ebertowski*) provides additional support for our conclusion. In that case, the defendant pleaded no contest to making criminal threats and resisting or deterring an officer and also admitted a gang allegation. (*Id*. at p. 1172.) On appeal, he challenged a probation condition requiring him to submit passwords to all electronic devices and social media sites, and to submit to probationary searches of those devices and sites. The *Ebertowski* court concluded that the electronic search condition was reasonable under the *Lent* test, not only because it was related to the defendant's crimes, but because it "was also necessarily related to his future criminality." Closely monitoring the defendant's gang associations through his use of social media was, the court found, the "only way" to safely allow him to remain in the community without posing "an extreme risk to public safety." (*Id*. at p. 1177.) By a parity of reasoning, the electronic search condition imposed on appellant is the best if not the only way to safely place her with sister without posing an extreme risk to the safety of herself, her mother and the public.

Appellant is very troubled, torn by serious mental illnesses, a dysfunctional family life,[6] a significant gap in her educational training, and poor social choices that, if not controlled, would doom her to reoffend and to violate probation. The juvenile court did not simply impose the electronic search clause reflexively, but with acute awareness of the need for close supervision of appellant's daily activities for there to be any hope of her success on probation. Not only was this the juvenile judge's conclusion, but the social and mental health professionals advising the court likewise concluded that close, daily monitoring of appellant was essential to the success of her wardship, and the safety of appellant, her estranged family member, and the community. In fact, the department warned that if sufficient supervision was not available for appellant, a higher level of care, such as a residential treatment facility, should be considered.

---

[6] Appellant's biological father committed suicide by hanging and his body was discovered by mother when she herself was 18 years old.

14

As did the juvenile court, we conclude that the electronic search condition in this case was not only warranted, but vital to ensure appellant's compliance with the terms of her probation. It also represents perhaps the best means by which the panoply of social and mental challenges that appellant must confront and overcome can be supervised and monitored. This was necessary, not only for appellant's sake, but to protect the public.

Thus, the record here stands in stark contrast to *Erica R.* and *Mark C.*, which concluded that under the facts of those cases, the risk of future criminality did not justify imposition of the electronic search clauses. For example, in *Erica R.* the court found there was " 'no reason to believe' " that the electronic search condition would " 'serve the rehabilitative function of precluding [the minor] from any future criminal acts.' [Citation.]" (*Erica R.*, *supra*, 240 Cal.App.4th at p. 913.) Similarly, in *Mark C.* the court found no reasonable connection between the minor's criminal behavior (possession of a folding knife on school property), and the risk of future drug use, sufficient to justify imposition of the electronic search clause. (*Mark C.*, *supra*, 244 Ca.App.4th at pp. 525, 535.) Nor is this a case, like *J.B.*, where the court rejected an electronic search clause because the asserted justification was only to "facilitate general oversight of the individual's activities." (*J.B.*, *supra*, 242 Cal.App.4th at p. 758.) Here, imposition of an electronic search clause as a condition of appellant's probation was a reasonable means of imposing the level of supervision required to prevent future criminality and, therefore, it was not an abuse of discretion for the juvenile court to include it.

### 2. The Overbreadth Doctrine

Appellant alternatively argues that if the electronic search condition is reasonably related to preventing her future criminal conduct and the supervision of her probation, it nevertheless is unconstitutionally overbroad because it is not narrowly tailored to achieve those objectives without unduly impairing her First Amendment rights. We disagree.

Appellant's broad array of problems mandates intensive supervision in order for her to have any chance of success on probation. Thus, a broader search condition is justified here. Again, *Ebertowski*, *supra*, 228 Cal.App.4th 1170 reinforces our conclusion. The electronic search condition in that case was not unconstitutionally

15

overbroad because the defendant's gang affiliation was undisputed and the "evident purpose of the password conditions was to permit the probation officer to implement the search, association, and gang insignia conditions that were designed to monitor and suppress [the] defendant's gang activity. Without passwords for [the] defendant's devices and social media accounts, the probation officer would not be able to search them . . . in order to assess [the] defendant's compliance with the unchallenged association and gang insignia conditions." (*Id.* at p. 1175.) In this case, it was undisputed that appellant needed intensive supervision if she was released from juvenile hall. A broad electronic search condition is consistent with that level of supervision.

Appellant now suggests that the electronic search condition imposed on her was not narrowly tailored in several respects. She notes that the password disclosures required in *Ebertowski* were limited to social media accounts, but here the clause covers all of her electronic passwords "including passwords [relating] to banking, health care, educational and other accounts."

We begin by pointing out that constitutional challenges to probation conditions that do not involve a pure question of law are subject to forfeiture if not raised in the trial court. As our Supreme Court has stated, "we do not conclude that 'all constitutional defects in conditions of probation may be raised for the first time on appeal, since there may be circumstances that do not present "pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court." [Citation.] In those circumstances, "[t]raditional objection and waiver principles encourage development of the record and a proper exercise of discretion in the trial court." [Citation.]' [Citation.]" (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 889.)

Whether or not appellant's particularized arguments regarding overbreadth have been preserved, this principle serves to highlight the fact that there is nothing in the record supporting the supposition that 17-year-old appellant has applications relating to banking, health care, or educational Web sites or accounts, nor does the record offer any

16

information as to how appellant uses electronic devices and how the search clause might infringe on her daily privacy.[7]

Appellant also asserts that the clause is overbroad because it creates a risk that probation department workers could "control and modify her personal accounts." Again, there was no evidence presented below that appellant had access to any such accounts. This conjectural risk simply does not override the importance that the probation department have access to appellant's passwords for legitimate rehabilitative and supervisorial purposes.

Rather than assume such rogue probation supervision is likely to occur, or speculate as to how appellant's individualized privacy could be impacted by the electronic search clause, we will simply point out that appellant is not without a remedy. If she can articulate specific concerns as to how the electronic search clause actually impacts her privacy adversely, that matter may be brought to the attention of the juvenile court in a motion to modify the terms of appellant's probation. (§ 1203.3, subd. (a) ["The court shall have authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence."]; *People v. Cookson* (1991) 54 Cal.3d 1091.)[8]

To be sure, there are cases that have held electronic search clauses imposed as a condition of probation to be unconstitutionally overbroad, given the circumstances of the particular case. But, it should be clear from the above recitation from the juvenile court record that we are reviewing a rather unique constellation of facts in this delinquency matter. Appellant does not need her electronic devices monitored simply because she is a

---

[7] While there is a record reference to appellant having a cell phone, there is no information as to whether it is a smart phone that provides broader communication and Internet access. Also, it is unclear whether appellant's access to Facebook as referenced in the record was limited to computer access.

[8] To preserve judicial resources and to protect the ward's rights and to further the goals and purposes of the juvenile wardship structure, we think it is the better practice to have the particulars of electronic device access probation conditions raised by the minor's counsel and addressed by the juvenile court in the first instance.

drug and alcohol user, or a chronic truant, or a person suffering from significant mental health issues, or someone who is trying to adjust to a new home life with her young sister, or because she is a potential danger to mother and the public. The clause is justified here because appellant has *all* of these challenges and issues.

Under the circumstances, and on this record, the court's use of the most accessible tools available to supervise appellant's progress on probation furthers the juvenile court's wardship responsibility and was not unconstitutionally overbroad. "The purposes of juvenile wardship proceedings are twofold: to treat and rehabilitate the delinquent minor, and to protect the public from criminal conduct. [Citations.] The preservation of the safety and welfare of a state's citizenry is foremost among its government's interests, and it is squarely within the police power to seek to rehabilitate those who have committed misdeeds while protecting the populace from further misconduct." (*In re Jose C.* (2009) 45 Cal.4th 534, 555.) With these two purposes in mind, "the juvenile court has statutory authority to order delinquent wards to receive 'care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances.' " (*In re Charles G.* (2004) 115 Cal.App.4th 608, 615.) "All dispositional orders in a wardship case must take into account the best interests of the child and the rehabilitative purposes of the juvenile court law. [Citation.]" (*In re S.S.* (1995) 37 Cal.App.4th 543, 550.)

### 3. Penal Code section 632

Alternatively, appellant argues that the electronic search condition permits the intrusion on the privacy of third parties in violation of Penal Code section 632 (section 632).[9]

---

[9] Section 632, subdivision (a) provides: "Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, [is subject to a fine, incarceration, or both]."

First, appellant forfeited this claim by failing to raise it in the trial court.  (*People v. Aguilar* (2015) 60 Cal.4th 862, 867-868.)  Second, it is based solely on the privacy rights of third parties under Penal Code section 632.  Therefore, appellant lacks standing to raise the issue.  "Courts are created to resolve cases and controversies and not to render advisory opinions or resolve questions of purely academic interest.  Accordingly, courts will not consider issues tendered by a person whose rights and interests are not affected." (*B.C. Cotton, Inc. v. Voss* (1995) 33 Cal.App.4th 929, 947–948.)

## C.  *The School Grounds Condition is Vague and Must Be Modified*

The disposition order also subjects appellant to a school grounds condition which requires that she "[n]ot be on the campus or grounds of any school unless enrolled, accompanied by a parent or guardian or responsible adult, or authorized by the prior permission of school authorities."  She asserts this school grounds condition is unconstitutionally vague unless it is modified to include a "knowledge" requirement, such that appellant can only be adjudged to violate her probation if she is on property she *knows* is part of a school campus or grounds.  Appellant reasons as follows:

"While some school grounds are readily identified as such, that is not always the case.  The boundaries of school campuses can include, for example, athletic fields, theaters, residence halls, restaurants and churches or other places of worship.  Accordingly, the probation condition requiring that appellant 'not be on the campus or grounds of any school unless enrolled, accompanied by a parent or guardian or responsible adult, or authorized by prior permission of school authorities' must be modified to require proof of knowledge.  [Citation.]"[10]

This division recently had occasion to address the "knowledge" or "scienter" issue in *In re Kevin F.* (2015) 239 Cal.App.4th 351 (*Kevin F.*).  The minor in that case sought to modify a condition of probation that prohibited him from possessing " 'anything that

---

[10]  While appellant concedes that her trial counsel did not object to the school grounds condition, respondent acknowledges that a facial constitutional challenge to a probation condition is subject to de novo review and is not forfeited by the failure to object in the trial court.  (*Sheena K.*, *supra*, 40 Cal.4th at p. 889.)

you could use as a weapon or someone else might consider to be a weapon.' " (*Id.* at p. 357.)  We began our analysis of that issue with a review of the origins of the constitutional prohibition against vague probation conditions:

"The prohibition on vagueness is rooted in ' "ordinary notions of fair play and the settled rules of law," and a statute that flouts it "violates the first essential of due process." ' [Citation.]  This concern for fair warning is aimed at ensuring that a ' "person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited, so that he may act accordingly." ' [Citation.]  The fear is that vague laws will ' "trap the innocent." ' [Citation.]  More broadly, ' " 'a law that is "void for vagueness" . . . impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." ' " ' [Citation.]" (*Kevin F.*, *supra*, 239 Cal.App.4th at pp. 357-358.)

We went on to conclude that the weapon use condition at issue in *Kevin F.* was unconstitutional, holding that without a knowledge or scienter modifier the prohibition quoted above did not provide adequate notice of the prohibited conduct.  (*Kevin F.*, *supra*, 239 Cal.App.4th at pp. 360-361.)  We pointed out that the language was broad enough to prohibit possession of an "ordinary household object" that could injure someone if used as a weapon, even if the minor did not have the intent to use it in that fashion.  (*Ibid.*)

Applying the rationale of *Kevin F.* and others like it,[11] we conclude the school grounds condition imposed here is unconstitutionally vague without a knowledge requirement.  Appellant is correct that the clause goes far beyond prohibiting unauthorized presence in school buildings or other areas where there can be no doubt the

---

[11]  Examples of cases in which the court modified conditions of probation to include a knowledge requirement include:  *Sheena K.*, *supra*, 40 Cal.4th at pp. 891-892 [probation condition limiting association with anyone disapproved by probation department]; *People v. Kim* (2011) 193 Cal.App.4th 836, 843 [firearm possession clause]; *In re Victor L.* (2010) 182 Cal.App.4th 902, 912-913, 931 [weapon and ammunition possession].)

area is part of a school campus (a gymnasium, for example).  Instead, it covers any physical area that comprises part of a school "ground" or campus.  Given the diverseness and expansiveness of some school facilities, it is easy to imagine appellant being present in an area that is part of a school ground, but where there is no indicia of that association. For this reason, the school grounds condition is modified to include a "knowledge" requirement, as set forth below.

## IV.

## DISPOSITION

The school grounds condition is modified to read: "The minor shall not knowingly be on the campus or grounds of any school unless enrolled, accompanied by a parent or guardian or responsible adult, or authorized by the prior permission of school authorities."  As modified, the judgment is affirmed.

_____
RUVOLO, P. J.

We concur:

_____
REARDON, J.

_____
RIVERA, J.

21

Trial Court:                       Alameda County Superior Court

Trial Judge:                     Hon. Leopoldo E. Dorado

Counsel for Appellant:        Stephanie M. Adraktas, by appointment of the Court of Appeal under the First District Appellate Project's Assisted Case System

Counsel for Respondent:      Kamala D. Harris
Attorney General of California

Gerald A. Engler
Chief Assistant Attorney General

Jeffrey M. Laurence
Acting Senior Assistant Attorney General

Seth K. Schalit
Supervising Deputy Attorney General

Donna M. Provenzano
Supervising Deputy Attorney General