Filed 9/21/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAYLO A. TRUJILLO,<br><br>    Defendant and Appellant. | D071715<br><br><br><br>(Super. Ct. Nos. SCE364544,<br>                SCE364802) |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel B. Goldstein, Judge. Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

In separate cases, Daylo Trujillo pleaded guilty to attempted robbery and assault by means likely to cause great bodily injury. (Pen. Code, §§ 211, 664, 245, subd. (a)(4).)

After a combined sentencing hearing, the court sentenced Trujillo to one year in county jail and three years' formal probation.

Trujillo's sole appellate challenge concerns an electronics-search probation condition imposed in both cases. He contends the condition is unreasonable under California Supreme Court standards (see *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*)) and is constitutionally overbroad.[1]

We reject these contentions. The trial court did not abuse its discretion in concluding the condition is reasonable under *Lent* because it will allow the probation department to effectively supervise Trujillo. Additionally, the probation condition satisfies constitutional standards because the infringement on Trujillo's privacy rights is outweighed by the state's strong need to closely monitor Trujillo's conduct and protect public safety, and there are no facts showing Trujillo's electronics contain the type of private information meriting heightened protection or that a search of these devices would be more intrusive than a warrantless search of his home, to which Trujillo has not

---

[1] Numerous cases addressing the propriety of an electronics-search probation condition are currently pending review in the California Supreme Court. (See *In re Ricardo P.* (2015) 241 Cal.App.4th 676, review granted Feb. 17, 2016, S230923; *In re Patrick F.* (2015) 242 Cal.App.4th 104, review granted Feb. 17, 2016, S231428; *In re Alejandro R.* (2015) 243 Cal.App.4th 556, review granted Mar. 9, 2016, S232240; *In re Mark C.* (2016) 244 Cal.App.4th 520, review granted Apr. 13, 2016, S232849; *In re A.S.* (2016) 245 Cal.App.4th 758, review granted May 25, 2016, S233932; *In re J.E.* (2016) 1 Cal.App.5th 795, review granted Oct. 12, 2016, S236628 (*J.E.*); *People v. Nachbar* (2016) 3 Cal.App.5th 1122, review granted Dec. 14, 2016, S238210 (*Nachbar*); *People v. Bryant* (2017) 10 Cal.App.5th 396, review granted June 28, 2017, S241937.)

objected. The record does not support that the electronics-search condition is unnecessarily broad or will result in an unjustified invasion of Trujillo's privacy rights.

## FACTUAL AND PROCEDURAL BACKGROUND

We base our factual summary on the probation reports. In October 2016, at about 2:15 a.m., two individuals (S and V) were retrieving S's car left in a Smart and Final parking lot. When S and V drove into the parking lot, Trujillo was inside S's parked car. Trujillo then exited the car, approached S and V, and pointed what appeared to be a semi-automatic handgun at them (which later turned out to be an airsoft replica gun). When S got out of the car and walked towards Trujillo, Trujillo pointed the gun at S's face. S backed away, and Trujillo struck him in the head with the gun. Trujillo then pointed the gun at V and demanded she give him everything she had. When V refused, Trujillo fled. S and V called law enforcement.

S sustained a large cut to his head. S's vehicle (that had been left at the parking lot) was damaged. S reported items missing from his car, including $100 in cash, a phone charger, a backpack, and the vehicle registration.

Several hours later, at about 5:15 a.m. Trujillo approached another victim (C) at a fast-food restaurant about 100 yards away from the Smart and Final parking lot. C was in his vehicle waiting at a drive-through window. Trujillo brandished an airsoft gun, pointed it at C's face, and demanded cash. C believed the gun was real and feared for his safety, but was able to wrestle the weapon away from Trujillo. After Trujillo fled, C called the police. A security camera captured the event.

3

Shortly after, deputies arrested Trujillo and transported him to a sheriff's substation. Trujillo's vehicle contained a bottle with two Xanax pills (that had not been prescribed to him). Deputies interviewed Trujillo while he was in a holding cell. His breath had a strong alcohol odor and he exhibited slurred speech. Trujillo said he had been " 'drinking all night,' but could not recall what he had been drinking." He told deputies he was "desperate for money."

After being charged by separate complaint for each incident, Trujillo pleaded guilty in both cases. On the Smart and Final parking lot incident, Trujillo pleaded guilty to assault by means likely to cause great bodily injury. On the fast-food incident, Trujillo pleaded guilty to attempted robbery.

*Probation Reports*

A separate probation report was prepared for each case. The probation reports noted that 19-year-old Trujillo had no criminal history, and the parties had agreed he would be granted probation. On the Smart and Final case, the probation officer summarized his interview with Trujillo. He said Trujillo admitted using Xanax pills and drinking alcohol before the offenses, and Trujillo believes the combination of the pills and alcohol caused him to commit the crimes. Trujillo apologized and said he learned his lesson.

The other probation report provided a similar interview summary, and also explained various issues in Trujillo's background, including that his biological father committed suicide when Trujillo was a small child, and Trujillo's mother abandoned the

4

family in 2013. Two of Trujillo's brothers have died. Trujillo's younger brother committed suicide in 2014 and Trujillo witnessed the suicide. The other brother died in 2015. Trujillo has three younger siblings (ages 13, 6, and 3), whom he is helping to support. Trujillo did not graduate from high school. At the time of his arrest, he had been working in the fast food industry. He said he had been working at two restaurants for a combined 120 hours per week, earning approximately $1,000 per month. Upon his release, Trujillo plans to live with his aunt.

Trujillo admits he drinks alcohol daily, and believes his current legal problems are related to his alcohol use. Trujillo said he abuses alcohol to cope with the death of his two siblings and is willing to participate in treatment and abide by all proposed probation conditions. Trujillo denied having a mental health disorder or having medications for mental health problems. He claimed the day of the crimes was the first time he had used Xanax pills and said "it was out of character for him to do such a crime." He indicated he "previously dealt with suicidal ideation as a youth, but . . . is currently feeling 'good.' " He acknowledged he has experienced insomnia and nightmares since his brother's suicide, and said "he has coped with the event by 'drinking.' " He described his childhood as " 'rough.' " Trujillo has no gang tattoos and denied any gang affiliation, although his deceased younger brother had been associated with a gang. Trujillo expressed surprise that the plea agreement would permit him to avoid prison, stating the court was " 'giving me less than I thought I would get.' "

Both probation officers evaluated Trujillo under the COMPAS assessment tool (Correctional Offender Management Profiling for Alternative Sanctions). The assessments found Trujillo could be successfully guided and monitored in the community (as opposed to prison), but also identified multiple risk factors, including "Substance Abuse, Residential Instability, Social Isolation," and "Family Criminality."

The probation officers said they considered the results of the COMPAS assessment in conjunction with other relevant information to formulate the recommended probation conditions, and emphasized the importance of close supervision. One probation officer noted: "Interventions in the community may want to focus on cognitive behavioral interventions which would aim to restructure the way [Trujillo] interprets the world around him as a result of past traumatic experiences, i.e. parental abandonment, parental death, and witnessing his brother's suicide . . . ." The other probation officer stated: "Based on the COMPAS assessment, it appears [Trujillo] would benefit from some guidance and monitoring in the community via probation supervision and referrals to community resources. Supervision, along with treatment, will likely be beneficial to the defendant as it appears he is in need of guidance and coping skills to deal with tragic events he has experienced in his life."

Both probation officers recommended 365 days in county jail, and three years of formal probation, noting they did not evaluate the appropriateness of a prison sentence because the parties had agreed to probation. Both probation officers recommended numerous probation conditions, including the condition at issue in this case: "Submit

6

person, vehicle, residence, property, personal effects, *computers*, *and recordable media* . . . to search at any time with or without a warrant, and with or without reasonable cause, when required by [the probation officer] or law enforcement officer." (Italics added.) The other proposed probation conditions included: (1) seek and maintain full-time employment or schooling; (2) participate in recommended treatment, therapy, and counseling; (3) provide written authorization for the probation officer to receive progress and compliance reports from any medical/mental-health provider or other treatment provider; (4) do not knowingly use or possess alcohol or controlled substances without a prescription; (5) submit to any chemical test of blood, breath, or urine to determine blood alcohol content and/or controlled substance use; (6) attend anger management classes; and (7) prohibitions on owning, transporting, selling, or possessing various types of weapons, replica firearms, and other related instruments.

The probation officer in the fast-food attempted robbery case also recommended imposing gang-related conditions, including prohibitions on knowingly associating with gang members, and on knowingly wearing any gang-related clothing or other material. The probation officer in the Smart and Final assault case did not recommend any gang conditions.

*Sentencing Hearing*

At the consolidated sentencing hearing, defense counsel objected to two proposed probation conditions: (1) the "computers and recordable media" Fourth Amendment waiver condition (electronics-search condition), arguing the condition has "no logical

7

nexus to this charged crime" under *Lent*, *supra*, 15 Cal.3d 481 and *In re J.B.* (2015) 242 Cal.App.4th 749 (*J.B.*), and is unconstitutional; and (2) the imposition of gang conditions, arguing that "Mr. Trujillo is not a gang member [and therefore] there is no logical nexus to this offense."

The court first rejected the challenge to the electronics-search condition (which it said included cell phones), explaining:  "I think that in order to supervise the defendant now on two felonies, . . . one is legally violent [attempted robbery], the other is just violent [assault by means likely to result in great bodily injury].  And that is to supervise him and make sure that he's not engaging in criminal activity, I think it would assist the probation department to be able to review what is on his computer, his cell phone, et cetera, to make sure he's being law abiding and also he's rehabilitating."

With respect to the challenged gang conditions in the attempted-robbery case, the court said it was going to strike those proposed conditions, but the court imposed the gang-clothing and gang-sign prohibitions, noting "I don't think it's a great idea for you to be hanging out with gang members."

## DISCUSSION

Trujillo challenges the electronics-search condition, arguing it is unreasonable under the California Supreme Court's *Lent* standard, and constitutionally overbroad under the reasoning of *Riley v. California* (2014) __ U.S. __ [134 S.Ct. 2473] (*Riley*).

8

I. *Reasonableness Under* Lent *Standard*

A. *Legal Principles*

Probation is not a right, but an act of leniency that allows a defendant to avoid imprisonment. (*People v. Moran* (2016) 1 Cal.5th 398, 402.) When an offender avoids incarceration by accepting probation, state law authorizes the sentencing court to impose conditions that are "fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and . . . for the reformation and rehabilitation of the probationer . . . ." (Pen. Code, § 1203.1, subd. (j).) Under this code section, "courts have broad discretion to impose [probation] conditions to foster rehabilitation and to protect public safety . . . ." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120 (*Carbajal*).)

But this broad discretion "is not without limits." (*Carbajal*, *supra*, 10 Cal.4th at p. 1121.) "[A] condition of probation must serve a purpose specified in the statute," and conditions regulating noncriminal conduct must be " 'reasonably related to the crime of which the defendant was convicted or to future criminality . . . .' " (*Ibid.*) In *Lent*, the California Supreme Court held a probation condition is "invalid" under this standard *only* if the condition " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent*, *supra*, 15 Cal.3d at p. 486.) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379

9

(*Olguin*).) We review the reasonableness of a probation condition for an abuse of discretion. (*Ibid.*)

## B. *Analysis*

The parties agree the electronics-search condition has no relationship to the crimes to which Trujillo pled guilty (attempted robbery and assault by means likely to result in great bodily injury), and the condition relates to conduct that is not criminal. Therefore, the main issue is whether the condition is "reasonably related to future criminality" (the third *Lent* factor). (*Lent*, *supra*, 15 Cal.3d at p. 486.) After *Lent*, the California Supreme Court clarified that a probation condition "that enables a probation officer to supervise his or her charges effectively *is* . . . 'reasonably related to future criminality.' " (*Olguin*, *supra*, 45 Cal.4th at pp. 380-381, italics added; accord, *In re P.O.* (2016) 246 Cal.App.4th 288, 295 (*P.O.*).) Because the probation officer is responsible for ensuring the probationer refrains from criminal activity and obeys all laws during the probationary period, the court may appropriately impose conditions intended to aid the probation officer in supervising the probationer and promoting his or her rehabilitation. (*Olguin*, at pp. 380-381; *People v. Balestra* (1999) 76 Cal.App.4th 57, 67 (*Balestra*) ["a warrantless search condition is intended to ensure that the [probationer] is obeying the fundamental condition of all grants of probation, that is, the usual requirement . . . that a probationer 'obey all laws' "].) "This is true 'even if [the] condition . . . has no relationship to the crime of which a defendant was convicted.' " (*P.O.*, at p. 295, quoting *Olguin*, at p. 380.)

10

The facts here show the electronics-search condition is reasonably related to preventing Trujillo's future criminality. Nineteen-year-old Trujillo pleaded guilty to committing violent offenses against innocent bystanders in two separate incidents, and claimed to have done so because of alcohol intoxication. Although these were first-time offenses, the record shows Trujillo has substantial risk factors relevant to reoffending, including significant untreated alcohol abuse, social isolation, family history of suicide (one of which he witnessed), family members who had been gang members, and economic stress. As reflected in the probation reports, this young man appears to be at a crossroads. He can choose law-abiding behavior or he can slip into continued criminal conduct that presents a substantial danger to public safety. The court imposed the electronics-search condition with the awareness of these facts and the probation department's conclusion that Trujillo was at risk and would require close supervision of his daily activities to support a successful probation. The court made an express finding that "in order to supervise the defendant now on two [violent] felonies," the probation department needs to be able to "view what is on his computer, his cell phone . . . ." The record shows the court did not impose this condition as a matter of routine, but considered the specific facts relevant to Trujillo's case.

The court did not abuse its discretion. If the court permits this young convicted felon to avoid prison through probation despite his violent offenses, the court has the authority to take steps to help ensure Trujillo will remain crime free and that public safety objectives are satisfied. As our high court has observed, the purpose of requiring Fourth

11

Amendment search waivers as a probation condition is "to determine not only whether [the probationer] disobeys the law, but also whether he obeys the law. Information obtained [from an unexpected and unprovoked search] afford[s] a valuable measure of the effectiveness of the supervision given the defendant . . . ." (*Olguin*, *supra*, 45 Cal.4th at p. 382; *Balestra*, *supra*, 76 Cal.App.4th at p. 67; accord, *In re P.O.*, *supra*, 246 Cal.App.4th at p. 295.) The trial court had a reasonable basis to conclude the most effective way to confirm Trujillo remains law-abiding is to permit his electronic devices to be examined, rather than relying on a meeting or a telephone conversation. This required Fourth Amendment waiver is not open-ended, it applies only during the probation period. If Trujillo is successful at his probation, the Fourth Amendment waiver will terminate and his electronic devices will again be completely private. The court made the factual determination that the electronics-search condition is necessary to provide appropriate supervision for Trujillo while he is on probation. Under *Lent* and *Olguin*, the court did not err in reaching this conclusion.

Trujillo argues this case is unlike other Court of Appeal decisions that have upheld the reasonableness of an electronics-search conditions based on facts showing: (1) a connection between the defendant's past criminal conduct and the use of electronic devices or social media, such as the defendant's use of an electronic device to facilitate the crime (see *Nachbar*, *supra*, 3 Cal.App.5th at pp. 1125, 1130; see also *In re Erica R.* (2015) 240 Cal.App.4th 907, 913); or (2) facts reflecting the electronics-search condition

12

will enable the effective supervision of the defendant's compliance with *other specific probation conditions* (see *J.E.*, *supra*, 1 Cal.App.5th at p. 801).

We agree the particular circumstances in *Nachbar* and *J.E.* are not present in this case. For example, unlike *Nachbar*, there is no evidence that Trujillo used an electronic device in committing the crimes or of any connection between Trujillo's crimes and an electronic device. (See *Nachbar*, *supra*, 3 Cal.App.5th at p. 1130.) But the absence of these facts does not mean the search condition was unreasonable as a matter of law. The primary focus of *Lent's* third-prong jurisprudence has been on the particular facts and circumstances of the case before the court, rather than on establishing bright-line rules. (See *J.B.*, *supra*, 242 Cal.App.4th at p. 754; *In re Erica R.*, *supra*, 240 Cal.App.4th at p. 914; see also *Olguin*, *supra*, 45 Cal.4th at p. 383 ["relevant test is *reasonableness*"].) This makes sense given that the appropriateness of a particular probation condition necessarily depends on a myriad of tangible and intangible factors before the trial court, including the defendant's particular crime, criminal background, and future prospects. It is for the trial court, with the assistance of the probation officer and other experts, to determine the probation conditions that will permit effective supervision of the probationer. Under *Olguin*, our role in evaluating the third *Lent* factor is to determine whether there is a reasonable factual basis for the trial court to decide that the probation condition will assist the probation department to supervise the defendant. (*Olguin*, *supra*, 45 Cal.4th at pp. 380-381; accord, *P. O.*, *supra*, 246 Cal.App.4th at pp. 293-296.) The facts support this conclusion in this case.

13

We find unavailing Trujillo's principal reliance on *J.B.*, *supra*, 242 Cal.App.4th 749. There, a minor committed a petty theft by taking a shirt from a department store without paying for it. (*Id.* at p. 752.) In placing the minor on probation, the trial court required the minor to submit to a search of his electronics. (*Ibid.*) The minor objected, but the trial court found the condition was justified by the facts showing the minor was using marijuana for the prior two years; the minor's cell phone use was connected to his academic difficulties at school; and the minor used his cell phone in a disrespectful and disruptive manner. (*Id.* at p. 753.) The trial court also said it was " 'well aware' " that minors display aspects of their illegal drug use on social media, including " 'brag[ging] about their drug use' " and posting drug-use photographs. (*Ibid.*)

The reviewing court found the electronics-search condition was not reasonable under the three-part *Lent* test and also found it was constitutionally overbroad. (*J.B.*, *supra*, 242 Cal.App.4th at pp. 754-759.) The court reasoned chiefly there was no evidence to support that the minor's use of his electronic devices had any connection to his past or future criminal activity, or that the restriction would serve the rehabilitative function of precluding the minor from committing criminal acts. (*Id.* at pp. 755-759.) The court also suggested a minor's probation condition may need to be more narrowly tailored than an adult's probation condition. (*Id.* at pp. 755-756, 757-758.)

*J.B.* is unhelpful because the facts are materially distinguishable as it involved a shoplifting offense, whereas here Trujillo committed two violent felonies, implicating significant public safety concerns. Moreover, as have other courts, we disagree with the

14

notion that there must always be a specific factual showing of a connection between the electronics-search condition and defendant's future criminality. (See *P.O.*, *supra*, 246 Cal.App.4th at pp. 293-296.) Under *Lent* and *Olguin*, it is sufficient if the facts show the electronics-search condition will allow the probation department to effectively supervise the defendant to further the dual goals of rehabilitating the defendant and protecting the public.

Trujillo's reliance on *People v. Burton* (1981) 117 Cal.App.3d 382 and *In re Martinez* (1978) 86 Cal.App.3d 577 is also misplaced as both decisions predated *Olguin.* Both decisions followed the reasoning of another case from this court, *People v. Keller* (1978) 76 Cal.App.3d 827, which this court later repudiated, stating our *Keller* decision went "far beyond the *Lent* test" and was "inconsistent with subsequent case authority from both the United States and California Supreme Courts." (*Balestra*, *supra*, 76 Cal.App.4th at pp. 66, 68.) *Olguin* cited *Balestra* with approval. (*Olguin*, *supra*, 45 Cal.4th at p. 381.)

## II. *Constitutional Overbreadth Challenge*

Trujillo alternatively contends the electronics-search condition is unconstitutionally overbroad because it allows for searches of private information unrelated to his criminal conduct or future criminality.

" 'A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as constitutionally overbroad.' [Citation.] 'The essential question in an

overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement.' " (*People v. Pirali* (2013) 217 Cal.App.4th 1341, 1346; accord, *In re Sheena K.* (2007) 40 Cal.4th 875, 890.)  We review "constitutional challenges to probation conditions de novo." (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723 (*Appleton*).)

In contending the electronics-search condition is overbroad because it violates his fundamental privacy rights, Trujillo relies on the United States Supreme Court's *Riley* decision, in which the high court rejected the government's argument that law enforcement may, without a warrant, search a cell phone seized from an arrested individual. (*Riley*, *supra*, 134 S.Ct. at p. 2485.)  In so holding, the court discussed the fact that a modern cell phone can hold an immense amount of confidential information, including past and current medical records, past and current financial records, Internet searches involving highly personal issues, personal diaries, photographs, and intimate correspondence. (*Id.* at pp. 2489-2491.)  The court balanced the strong privacy intrusion arising from a search of this type of information with the law enforcement justifications for dispensing with the warrant requirement, and found the arrestee's privacy concerns outweighed the law enforcement justifications. (*Id.* at pp. 2485-2493.)  But the court made clear it was not holding "a cell phone is immune from search," and recognized its ruling would not necessarily extend in other situations in which law enforcement needs

16

are stronger. (*Id.* at pp. 2493-2494.) Reflecting the limited nature of its holding, the court stated: "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is . . . simple—get a warrant." (*Id.* at p. 2495.)

Relying on *Riley*, the Court of Appeal in *Appleton* concluded an electronics-search condition was constitutionally overbroad because it would allow the search of "vast amounts of personal information unrelated to defendant's criminal conduct or his potential future criminality," and remanded for the trial court to fashion a more narrowly tailored electronics-search condition. (*Appleton*, *supra*, 245 Cal.App.4th at pp. 724-727; accord, *P.O.*, *supra*, 246 Cal.App.4th at pp. 297-298.) Several months later, another Court of Appeal reached a different conclusion, and upheld an electronics-search condition against a constitutional overbreadth claim. (*J.E.*, *supra*, 1 Cal.App.5th at pp. 803-807.) The *J.E.* court emphasized the probationer's reduced privacy rights, the need for "intensive supervision," and the absence of any evidence showing the probationer's electronics contained the type of sensitive information identified in *Riley*. (*J.E.*, at pp. 804-807.)

In *Nachbar*, *supra*, 3 Cal.App.5th 1122, this court agreed with *J.E.*, and found *Appleton*'s analysis unpersuasive. We explained that although computers and cell phones can contain highly personal information, the overbreadth analysis is materially different from the warrant requirement at issue in *Riley*. (*Nachbar*, *supra*, 3 Cal.App.5th at p. 1129.) Both *J.E.* and *Nachbar* are currently before the California Supreme Court, as are many other Court of Appeal decisions addressing the same issue, some of which have

invalidated electronics-search conditions and others of which have upheld the conditions. (See fn. 1, *ante*.)  Pending any contrary guidance from the California Supreme Court, we continue to find *J.E.'s* reasoning convincing and reach the same conclusion as *J.E.* and *Nachbar* on the constitutional overbreadth issue.

First, a probationer does not " 'enjoy "the absolute liberty to which every citizen is entitled." ' "  (*United States v. Knights* (2001) 534 U.S. 112, 119.)  "Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens."  (*Ibid.*)

Second, although electronic devices can store a wealth of private information and are entitled to strong safeguards from governmental interference, a person's home also contains considerable confidential information and is a place in which a person has the absolute right to be "left alone," and thus has long been provided the highest level of protection from governmental interference.  (See *Riley*, *supra*, 134 S.Ct. at p. 2494 ["[o]pposition to [unrestrained] searches [of homes] was . . . one of the driving forces behind the [American] Revolution itself"]; *United States Department of Defense v. Federal Labor Relations Authority* (1994) 510 U.S. 487, 501 [the home "is accorded special consideration in our [federal] Constitution, laws, and traditions"]; *United States v. United States District Court* (1972) 407 U.S. 297, 313 ["physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed"]; *Rowan v. United States Post Office Dept.* (1970) 397 U.S. 728, 737 ["The ancient concept that 'a

18

man's home is his castle' into which 'not even the king may enter' has lost none of its vitality"].)  Yet courts routinely uphold probation conditions granting probation officers broad authority to search a probationer's residence without a warrant or reasonable cause. (See *People v. Ramos* (2004) 34 Cal.4th 494, 505-506; *Balestra*, *supra*, 76 Cal.App.4th at pp. 66-68; *In re Binh L.* (1992) 5 Cal.App.4th 194, 203-205.)  In this case, Trujillo does not challenge the probation condition providing the officers with the authority to conduct random and unlimited searches of his residence at any time and for no stated reason.

Third, the state's need to supervise a convicted criminal is different from the objectives of the arresting officer in *Riley*.  In contrast with the United States Supreme Court's somewhat critical view of law enforcement's perceived need to routinely search an arrestee's cell phone without waiting for a warrant (see *Riley*, *supra*, 134 S.Ct. at pp. 2485-2488), the factual record here supports that the electronics-search condition is necessary to protect public safety and to ensure supervision and rehabilitation during a three-year period.  Unlike the warrant requirement that can usually be quickly satisfied in an arrest situation, Trujillo has not identified any practical alternatives to the electronics-search condition in his particular case.  Although the probation condition allows the state to potentially invade privacy interests, it was a necessary means of imposing the level of supervision required to protect public safety and prevent future criminality, as an alternative to prison.  Because the probation department will need to monitor Trujillo with respect to the triggers for his criminal conduct (e.g., alcohol abuse, "desperate" financial circumstances, social isolation, family pressures, weapons purchases), a routine

19

search of his electronic data is strongly relevant to the probation department's supervisory function. Even when a governmental action constitutes a serious invasion of privacy rights, the action may be justified if it "substantially furthers one or more legitimate competing or countervailing [governmental] interests . . . ." (*In re Christopher M.* (2005) 127 Cal.App.4th 684, 695, disapproved on another ground in *People v. Gonzales* (2013) 56 Cal.4th 353, 375, fn. 6.)

Fourth, to the extent other appellate courts have found merit to constitutional overbreadth challenges (see e.g., *Appleton*, *supra*, 245 Cal.App.4th at pp. 724-727; *P.O.*, *supra*, 246 Cal.App.4th at pp. 297-298), we are reviewing Trujillo's *as-applied* constitutional challenge and therefore we are required to focus on the particular facts of this case, rather than uncritically follow conclusions of other courts considering different factual circumstances. (See *People v. Mitchell* (2012) 209 Cal.App.4th 1364, 1378.) Significantly, the factual record here contains no information that Trujillo owns a cell phone or computer *and* uses these devices to hold the type of sensitive medical, financial, or personal information described in *Riley* and *Appleton*. Although many devices hold this information, there is no evidence that this young man uses his devices in this way. Additionally, there are no facts in the record showing a search of Trujillo's electronics would be any more invasive than an unannounced, without-cause, warrantless search of his residence, a condition to which he has not objected. Absent particularized facts showing the electronics-search condition will infringe on Trujillo's heightened privacy

interests, there is no reasoned basis to conclude the condition is constitutionally overbroad or to remand for the court to consider a more narrowly-drawn condition.

To the extent Trujillo adds information on his electronic devices that would invoke stronger privacy protections beyond a warrantless search of his home and would be unrelated to his criminality or future criminality, Trujillo would have the right to seek a modification of the probation condition to protect the privacy of such information. (See Pen. Code, § 1203.2, subd. (b); *Olguin*, *supra*, 45 Cal.4th at p. 379.) But as the record stands now, there is no reasoned basis for more narrowly tailoring the search condition. Additionally, any concerns regarding the potential invasiveness of the electronics-search condition are ameliorated by the restriction against arbitrary, capricious, or harassing probation searches. (See *People v. Woods* (1999) 21 Cal.4th 668, 682; *People v. Cervantes* (2002) 103 Cal.App.4th 1404, 1408.)

DISPOSITION

Affirmed.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

21